In the

# United States Court of Appeals
### For the Seventh Circuit

No. 09-2123

WAYNE TALLEY,

*Plaintiff-Appellee*,

*v.*

UNITED STATES DEPARTMENT OF AGRICULTURE,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07 C 705—**Wayne R. Andersen**, *Judge*.

ARGUED DECEMBER 8, 2009—DECIDED FEBRUARY 12, 2010

Before EASTERBROOK, *Chief Judge*, and ROVNER and TINDER, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. Any "person" who willfully or negligently fails to comply with the Fair Credit Reporting Act is liable for damages. 15 U.S.C. §§ 1681n(a), 1681*o*(a). One of the Act's requirements is that lenders report borrowers' payment history accurately to credit agencies. 15 U.S.C. §1681s–2. The Department of Agriculture violated that requirement by reporting that

Wayne Talley is behind on a loan that has been paid off. Talley complained four times to Trans Union, a credit bureau, which asked the Department whether Talley was indeed delinquent. All four times, someone at the Department investigated, concluded that the loan had been repaid, and told Trans Union that Talley had satisfied all of his obligations. Trans Union then corrected Talley's credit history—and the next month the Department again told Trans Union that Talley was tardy in repaying an outstanding loan. Butting your head against a bureaucratic wall is no fun. The ongoing falsehoods hurt Talley's credit rating, so he filed this suit.

The Department does not deny that it violated the Act by telling Trans Union that Talley is a deadbeat, when he isn't, but it contends that he is not entitled to damages. The only remedy available, the Department maintains, is prospective relief—perhaps under the Privacy Act, 5 U.S.C. §552a, or the Administrative Procedure Act, 5 U.S.C. §702. Talley does not much fancy prospective relief, which would not redress his injuries.

According to the Department, sovereign immunity prevents any financial award. As the district court saw things, that position is embarrassed by the definition of "person" in §1681a(b): "any individual, partnership, corporation, trust, estate, cooperative, association, *government or governmental subdivision or agency*, or other entity." (Emphasis added.) To this the Department rejoins that, when §1681a(b) was enacted, the damages sections of the Act covered only "consumer reporting

agenc[ies]" and "user[s] of information." Sections 616 and 617 of Pub. L. 91-508, 84 Stat. 1114, 1134 (1970).

When sections 1681n and 1681*o* were extended to all "persons" in 1996 (§2412 of Pub. L. 104-208, 110 Stat. 3009–446), the definition of "persons" was unchanged. This leads the Department to insist that Congress and the President may not have realized that they were exposing the United States to financial liability—not only actual but also punitive damages, see §1681n(a)(2)— plus the potential for civil suits by states, §1681s(c), and criminal prosecution of any person who "obtains information on a consumer from a consumer reporting agency under false pretenses", §1681q. And without proof that Congress opened the Treasury to financial awards, the argument wraps up, sovereign immunity prevails. See *Library of Congress v. Shaw*, 478 U.S. 310 (1986); *Employees v. Missouri Department of Public Health*, 411 U.S. 279 (1973). The district judge concluded that §1681a(b) is clear enough. 2007 U.S. Dist. LEXIS 50388 (N.D. Ill. July 12, 2007). After a bench trial, the court awarded Talley $10,000 in compensatory damages plus $20,055 in attorneys' fees. 2009 U.S. Dist. LEXIS 8725 (N.D. Ill. Feb. 4, 2009).

One jurisdictional issue requires discussion at the outset. (Others must be postponed until some ground-work has been laid.) The judgment entered by the district court reads: "[P]laintiff's motion to adopt findings of fact and conclusions of law is granted. Plaintiff's petition for attorneys fees and costs is granted." This does not comply with Fed. R. Civ. P. 58. A judgment

must state the relief to which the prevailing party is entitled—and, to ensure that it does, the judge must review the draft before its entry. Granting motions differs fundamentally from awarding relief. This judgment not only fails to mention relief (the figures we set out above come from the judge's opinions) but also shows no signs of review and approval by the judge; it bears the typed name (sans signature) of a deputy clerk. Noncompliance with Rule 58 is common in the Northern District of Illinois, despite frequent reminders from this court. See, e.g., *Rush University Medical Center v. Leavitt*, 535 F.3d 735 (7th Cir. 2008).

"If courts are to require that others follow regular procedures, courts must do so as well*." Hollingsworth v. Perry*, No. 09A648 (U.S. Jan. 13, 2010), slip op. 16–17. Because the parties agree that proceedings are over in the district court, the failure to enter a proper judgment does not prevent an appeal. *Bankers Trust Co. v. Mallis*, 435 U.S. 381 (1978). We hope that the district judge's failure to perform his ministerial duties will not cause Talley any problems when he tries to collect. (Talley must submit a judgment as part of the payment process. 31 C.F.R. §256.12(a); see also 28 U.S.C. §2414. We trust that the district court will correct its judgment if greater specificity is necessary to enforcement.)

As it happens, the district court's jurisdiction and ours are in question for other reasons: The Tucker Act's allocation of cases between district courts and the Court of Federal Claims, and between the regional circuits and the Federal Circuit. See 28 U.S.C. §§ 1295(a)(2), 1346(a), 1491(a).

Before turning to those questions, however, we need to decide whether the Tucker Act plays any role in this suit—and before asking *that* question we need to be sure just what argument the Department of Agriculture is presenting.

After reading its briefs, we understood the Department to contend that federal agencies are not "persons" for the purpose of the Fair Credit Reporting Act, because §1681a(b), though admirably clear, was enacted before the amendment extending §1681n and §1681*o* to all "persons." Giving the sequence of enactment the effect of making the Act inapplicable to the national (and state) governments would mean, however, that "government or governmental subdivision or agency" in §1681a(b) had no legal effect, unless, every time Congress amends the Act, either the statute or its legislative history contains an express declaration that the original definition of "person" applies to the Act's amended as well as its original version. Because Congress need not add "we really mean it!" to make statutes effectual, and because courts don't interpret statutes to blot out whole phrases, that line of argument had poor prospects. See, e.g., *Swain v. Pressley*, 430 U.S. 372, 378–79 & n.11 (1977); *Harrison v. PPG Industries, Inc.*, 446 U.S. 578, 592 (1980) ("it would be a strange canon of statutory construction that would require Congress to state in committee reports or elsewhere in its deliberations that which is obvious on the face of a statute").

At oral argument, however, counsel for the government conceded that, by virtue of §1681a(b), all sub-

stantive requirements that the Fair Credit Reporting Act imposes on any "person" apply to the United States and its agencies. Counsel told us that the only dispute concerns remedy: although 5 U.S.C. §702 may waive the United States' sovereign immunity for prospective relief, there is no equivalent waiver for money damages. To be sure, the Act says that damages are available, but the sections of the Act that authorize financial awards do not say whether (and, if so, how) they apply to units of government. The Department's argument, in other words, is that the Act does not meet the Supreme Court's standards for financial relief against the Treasury. Decisions such as *United States v. Testan*, 424 U.S. 392, 398 (1976), and *United States v. Mitchell*, 463 U.S. 206, 216–17 (1983), say that damages may be awarded against the United States only if Congress does three things: (1) create a substantive right; (2) mandate money damages as compensation for a violation; and (3) expressly authorize that relief against the United States. Section 1681a(b) in conjunction with §1681s–2 does the first of these things; §1681n(a) and §1681*o*(a) do the second; but nothing in the Fair Credit Reporting Act does the third, the Department contends.

To put the Department's argument in this way, however, poses the question: Why must the provision authorizing an award against the United States be *in* the Fair Credit Reporting Act? The Tucker Act is general legislation waiving sovereign immunity, and authorizing money damages, for any "civil action or claim against the United States . . . founded either upon the Constitution, or any Act of Congress". If the plaintiff wants $10,000 or

less, the suit belongs in a district court, §1346(a)(2); otherwise it belongs in the Court of Federal Claims, §1491(a)(1). *Testan* and *Mitchell* stress that the Tucker Act does not itself create any substantive obligation or mandate money damages as compensation for a violation of a substantive obligation. But if some other statute does those things, then the Tucker Act waives sovereign immunity. Magic language is unnecessary; all that's needed is a fair inference that the substantive statute requires the United States to pay for the harm it inflicts. See *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472–73 (2003). The Fair Credit Reporting Act satisfies that standard.

After oral argument, we invited the parties to file supplemental briefs addressing the question whether the Tucker Act supplies the authorization that the government contends is missing from the Fair Credit Reporting Act. The Department of Agriculture responded by arguing that the Fair Credit Reporting Act has (implicitly) superseded the Tucker Act. An argument about implicit repeal is a tough row to hoe, for the Tucker Act is available unless a later statute *unambiguously* demonstrates that it is not. See *Preseault v. ICC*, 494 U.S. 1, 12–16 (1990); *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1017–19 (1984); *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 126–36 (1974). To say that supersession is implicit is to say, one might suppose, that it is anything but "unambiguous." That's where we come out in the end, but the details of the Department's argument require some attention.

According to the Department of Agriculture, 15 U.S.C. §1681p displaces the Tucker Act by providing that "[a]n action to enforce any liability created under" the Fair Credit Reporting Act "may be brought in any appropriate United States district court, without regard to the amount in controversy, or in any other court of competent jurisdiction." Under the Tucker Act, by contrast, district courts hear only claims for $10,000 or less; bigger suits go to the Court of Federal Claims. By providing for jurisdiction of all suits in the district courts, the Department insists, the Fair Credit Reporting Act partially repeals the Tucker Act. There are two problems with this line of argument.

First, no one could call §1681p an "unambiguous" modification of the Tucker Act, to which §1681p does not refer by name or citation. The statute at issue in the *Regional Rail Reorganization Act Cases* created a special three-judge district court to hear controversies stemming from the nationalization of the Penn Central; if, as the Supreme Court held, that unique court did not conflict with the Tucker Act, why would §1681p do so? To grant jurisdiction to one court is not to withdraw jurisdiction from another, unless the statute says that its grant is exclusive—as §1681p does not (for it says that suit may be brought "in any other court of competent jurisdiction"). A grant of jurisdiction to one court does not withdraw jurisdiction from another. *Yellow Freight System, Inc. v. Donnelly*, 494 U.S. 820 (1990); *Tafflin v. Levitt*, 493 U.S. 455 (1990); *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 450–51 (7th Cir. 2005).

Second, it is easy to give effect to both §1681p and the Tucker Act by treating §1681p's phrase "without regard to the amount in controversy" as superseding the allocation of large demands to the Court of Federal Claims. Then all suits under the Fair Credit Reporting Act may be litigated in a district court, while the Tucker Act remains available as a waiver of sovereign immunity. Doubtless this was not the principal reason for the language of §1681p. In 1970, when the first version of the Fair Credit Reporting Act entered the United States Code, there was an amount-in-controversy requirement for federal-question suits as well as diversity suits. In 1980 the jurisdictional minimum for federal-question cases was rescinded. Section 2(a) of Pub. L. 96-486, 94 Stat. 2369 (1980). The many statutes, such as §1681p, that had authorized low-stakes federal-question suits were left in place. But that history does not, at least need not, imply that the phrase "without regard to the amount in controversy" has no continuing effect; the meaning of a statute depends on what it says, not on what lawmakers foresaw. See, e.g., *Dodd v. United States*, 545 U.S. 353 (2005).

Thus there are two possibilities. One is that §1681p leaves the Tucker Act unaffected because it does not mention that statute; the other is that it alters the allocation of suits between district courts and the Court of Federal Claims. No sensible understanding of the door-*opening* language in §1681p revokes the Tucker Act's waiver of sovereign immunity for statutory claims.

The Department of Agriculture relies on a series of decisions from the Federal Circuit holding that a grant of

jurisdiction to federal district courts implies the absence of jurisdiction in the Court of Federal Claims—and hence, the Department insists, the negation of any waiver of sovereign immunity. See *Blueport Co. v. United States*, 533 F.3d 1374 (Fed. Cir. 2008); *Taylor v. United States*, 310 Fed. App'x 390 (Fed. Cir. 2009). The Department misreads these decisions. *Blueport* concludes that the Digital Millennium Copyright Act does not mandate payment by the United States and thus lacks a condition to relief under the Tucker Act; it does not hold that a grant of jurisdiction to a district court revokes the waiver of sovereign immunity if Congress has otherwise authorized an award of money damages. And *Taylor* concludes that Title VII of the Civil Rights Act of 1964, which permits employment-discrimination claims against the United States to be litigated in district courts without regard to the amount in controversy, is incompatible with litigation in the Court of Federal Claims; it does not hold that a grant of authority to a district court undoes a waiver of sovereign immunity and thus frustrates effectual relief in any court. *Taylor* and similar decisions in the Federal Circuit take the approach laid out two paragraphs above (the one beginning "Second. . ."); they do not hold that a grant of general jurisdiction to district courts means that an injured party must be turned away empty-handed.

A few other arguments can be dealt with briefly.

The statute of limitations for suits under the Tucker Act is six years, 28 U.S.C. §2401(a), while the Fair Credit Reporting Act imposes a limit of two years from

discovery of the violation, plus a statute of repose at five years. 15 U.S.C. §1681p. The Department contends that this difference shows that the Tucker Act cannot be applied to suits under the Fair Credit Reporting Act. Yet different statutes of limitations are common in federal practice; the rule is that the more specific limit prevails, not that a short limit cancels out any substantive statute. See *United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1 (2008); *United States v. A.S. Kreider Co.*, 313 U.S. 443, 447 (1941). Talley filed this suit less than two years after the violation, so he has satisfied all timeliness requirements.

The Fair Credit Reporting Act allows damages for negligent falsehoods. 15 U.S.C. §1681*o*. The Department deems negligence a form of liability in tort and notes that tort suits must proceed under the Federal Tort Claims Act, 28 U.S.C. §§ 2671–80, rather than the Tucker Act. This line of argument is unsound because a claim under §1681*o* is not one in tort. Negligence is a failure to exercise reasonable care, which can lead to statutory as well as common-law liability. Some torts (such as trespass) use a strict-liability approach under which the defendant's care is unimportant; some (such as fraud) depend on proof of intentional wrongdoing; still others can be established by negligence. But to show that tort law uses all of these approaches is not remotely to show that any statutory claim that depends on any of them must be a tort, and thus outside the Tucker Act. By that logic, the Tucker Act would not apply to *any* statutory claim, for all statutes use one or more of strict liability, bad intent, or failure to take appropriate precautions.

The Tucker Act allows money damages but not other forms of relief, such as injunctions and declaratory judgments. At least one decision suggests that the Tucker Act does not authorize punitive damages. *Bowen v. Massachusetts*, 487 U.S. 879, 905–06 n.42 (1988). See also *Department of Energy v. Ohio*, 503 U.S. 607 (1992). But the Fair Credit Reporting Act says that courts may award punitive damages for willful violations. 15 U.S.C. §1681n(a)(2). According to the Department of Agriculture, this must mean that the Fair Credit Reporting Act displaces the Tucker Act. As we see things, however, it means only that punitive damages are unavailable against the United States unless the Tucker Act authorizes them. Statutes waiving sovereign immunity often limit recovery to actual loss; the Federal Tort Claims Act is an example. 28 U.S.C. §2674 ¶1. That a substantive statute allows punitive damages does not make the waiver of sovereign immunity for compensatory damages vanish for the Tucker Act any more than it does for the Federal Tort Claims Act. See also *Werner v. Department of the Interior*, 581 F.2d 168 (8th Cir. 1978).

Having decided that the Tucker Act waives sovereign immunity for compensatory-damages claims under the Fair Credit Reporting Act, we must attend to two final jurisdictional issues: First, does an award of attorneys' fees count toward the $10,000 maximum under 28 U.S.C. §1346(a)(2)? Second, does appellate jurisdiction lie in the Federal Circuit rather than this court?

If we are right in concluding above that the Fair Credit Reporting Act permits suits against federal agencies to

proceed in district court without regard to the amount in controversy, then jurisdiction is secure. The district court had subject-matter jurisdiction under 28 U.S.C. §1331 and 15 U.S.C. §1681p, while we have jurisdiction under 28 U.S.C. §1291. But suppose that this is wrong. Jurisdiction remains.

The Tucker Act permits district courts to entertain a "civil action or claim against the United States, not exceeding $10,000 in amount". 28 U.S.C. §1346(a)(2). The district court's award of compensatory damages to Talley is exactly $10,000, which is proper under this language. The district judge also awarded attorneys' fees, as 15 U.S.C. §1681n(a)(3) and §1681o(a)(2) permit. When attorneys' fees are part of damages, they count toward the $10,000 limit, see *Graham v. Henegar*, 640 F.2d 732, 735–36 (5th Cir. 1981), just as attorneys' fees as damages count toward the $75,000 amount-in-controversy requirement for diversity jurisdiction. See *Hart v. Schering-Plough Corp.*, 253 F.3d 272 (7th Cir. 2001); *Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 958–59 (7th Cir. 1998). But attorneys' fees as part of costs do not count toward such thresholds, any more than the costs themselves do. *Ibid*.

The Fair Credit Reporting Act authorizes a district court to award "the costs of the action together with reasonable attorney's fees". 15 U.S.C. §§ 1681n(a)(3), 1681o(a)(2). This implies that fees are classified with costs. The amount in controversy, we explained in *Gardynski-Leschuck*, is how much it would take to redress the plaintiff's injury when the suit begins. What happens during the course of litigation does not change the

original stakes. If the United States had tendered $10,000 to Talley before this suit got under way, that would have satisfied his claim and avoided the attorneys' fees he incurred in order to pursue the litigation; only pre-suit fees logically should be treated as part of the damages. The amount awarded to Talley compensates him for the expenses of counsel during the litigation and therefore does not count toward the $10,000 any more than the costs of litigation would count.

This leaves only appellate jurisdiction—and though it may seem strange to reach last an issue that is a precondition to entertaining the appeal at all, the only way to determine what role this court plays has been to determine whether and how the Tucker Act applies. We wrote in *Citizens Marine National Bank v. Department of Commerce*, 854 F.2d 223, 225 (7th Cir. 1988), that if jurisdiction in the district court depends "in whole or in part" on the Tucker Act, then the appeal belongs to the Federal Circuit under 28 U.S.C. §1295(a)(2). Jurisdiction in a different circuit would lead to a transfer under 28 U.S.C. §1631. See *United States v. Mottaz*, 476 U.S. 834, 848–49 n.11 (1986).

*Citizens Marine National Bank* was decided before we concluded that sovereign immunity does not diminish a district court's subject-matter jurisdiction. See *United States v. Cook County*, 167 F.3d 381 (7th Cir. 1999); *Collins v. United States*, 564 F.3d 833, 837 (7th Cir. 2009) (collecting other decisions rendered after *Cook County*). In recent years the Supreme Court has been emphatic that subject-matter jurisdiction refers to a tribunal's adjudica-

tory competence, and that rules affecting how the tribunal handles litigation, and what remedies are available, do *not* concern jurisdiction. See, e.g., *Union Pacific R.R. v. Brotherhood of Locomotive Engineers*, 130 S. Ct. 584 (2009); *Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006); *Kontrick v. Ryan*, 540 U.S. 443 (2004). We recognized in *Collins* that some other courts of appeals continue to call sovereign immunity a "jurisdictional" doctrine, but we also noted that those courts have not addressed the arguments presented in *Cook County* or the Supreme Court's recent efforts to define more precisely the proper scope of the phrase "subject-matter jurisdiction." See also *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005) (subject-matter jurisdiction does not depend on existence of a right of action for damages).

If a waiver of sovereign immunity is indispensable to jurisdiction, then when the plaintiff seeks damages jurisdiction *must* rest on the Tucker Act, which in turn directs appeals to the Federal Circuit. But if, as we held in *Cook County* and its successors, statutes such as 28 U.S.C. §1331 and 15 U.S.C. §1681p supply subject-matter jurisdiction whether the defendant is private or public, then subject-matter jurisdiction need not rest on the Tucker Act even in part. A plaintiff is "absolute master of what jurisdiction he will appeal to." *Healy v. Sea Gull Specialty Co.*, 237 U.S. 479, 480 (1915); *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 809 n.6 (1986). Talley appealed to §1331 and §1681p; he did not invoke the Tucker Act as a grant of subject-matter jurisdiction. The Tucker Act *might* have been used for

jurisdiction; it is *both* a grant of jurisdiction and a waiver of sovereign immunity. But if the plaintiff elects to use the latter without the former, then jurisdiction does not arise under the Tucker Act. This court therefore has appellate jurisdiction.

AFFIRMED