# United States Court of Appeals for the Federal Circuit

---

**JAMES X. BORMES, INDIVIDUALLY
AND ON BEHALF OF ALL OTHERS SIMILARLY
SITUATED,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee.*

---

2009-1546

---

Appeal from the United States District Court for the Northern District of Illinois in case no. 08-CV-7409, Judge Charles R. Norgle, Sr.

---

Decided: November 16, 2010

---

JOHN G. JACOBS, The Jacobs Law Firm, CHTD., of Chicago, Illinois, argued for plaintiff-appellant.

HENRY C. WHITAKER Trial Attorney, Appellate Staff, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were TONY WEST, Assistant Attorney General, and MARK B. STERN, Attorney. Of counsel was TIMOTHY P. MCILMAIL, Attorney.

---

Before RADER, *Chief Judge*, and NEWMAN and MOORE, *Circuit Judges*.

RADER, *Chief Judge*.

James Bormes appeals the dismissal of his class action lawsuit under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681n(a). *See Bormes v. United States*, 638 F. Supp. 2d 958 (N.D. Ill. 2009). Because FCRA is a money-mandating statute that supports jurisdiction under 28 U.S.C. § 1346(a)(2), this court vacates the dismissal and remands for further proceedings.

I

On August 9, 2008, Bormes, an attorney, filed a lawsuit on behalf of one of his clients in the U.S. District Court for the Northern District of Illinois using its online document filing system. Bormes paid the filing fee using his credit card, and the transaction was processed through the government's pay.gov system. The government then provided Bormes with a confirmation webpage that appeared on Bormes' computer screen. The confirmation page contained the expiration date of Bormes' credit card.

Alleging that the display of his and similarly situated plaintiffs' credit card information violated section 1681c(g)(1) of FCRA, Bormes filed a class action lawsuit against the government. Bormes seeks, among other things, statutory damages, attorney's fees, and costs. In his complaint, Bormes alleged jurisdiction under both 28 U.S.C. § 1346(a)(2), commonly referred to as the Little Tucker Act, and FCRA's own jurisdictional provision, 15 U.S.C. § 1681p.

The government filed a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted. The district court concluded that it had jurisdiction under FCRA, but granted the government's motion to dismiss under Rule 12(b)(6) on the ground that FCRA did not waive the federal government's sovereign immunity for this suit. Because the district court exercised jurisdiction under the jurisdictional provision in FCRA itself, it held that Bormes' arguments for jurisdiction under the Little Tucker Act were moot.

On appeal, the government filed a motion to transfer this case to the Court of Appeals for the Seventh Circuit. A motions panel of this court denied the motion on the ground that Bormes' complaint invoked the district court's jurisdiction under the Little Tucker Act. *Bormes v. United* States, No. 2009-1546, 2010 WL 331771, at *2 (Fed. Cir. Jan. 27, 2010). The panel did not, however, make any decision as to whether FCRA is a "money-mandating statute" sufficient to create jurisdiction under the Little Tucker Act.

After Bormes filed his appeal in this case, a panel of the Court of Appeals for the Seventh Circuit determined that the Tucker Act waives sovereign immunity for FCRA claims. *See Talley v. U.S. Dep't of Agric.*, 595 F.3d 754, 759 (7th Cir. 2010) (Easterbrook, C.J.). The appellate court in *Talley* also held that it did not need to transfer the case to this court because the plaintiff only sought to use the Tucker Act for a waiver of sovereign immunity, not as a basis for jurisdiction. "The Tucker Act *might* have been used for jurisdiction; it is *both* a grant of jurisdiction and a waiver of sovereign immunity. But if the plaintiff elects to use the latter without the former, then jurisdiction does not arise under the Tucker Act. This court therefore has appellate jurisdiction." *Id.* at 763.

The Seventh Circuit later granted the government's motion for rehearing *en banc* and vacated the panel opinion. In the order granting rehearing *en banc*, the court asked the parties to brief "whether the Tucker Act is the exclusive source of subject-matter jurisdiction for remedies that depend on its waiver of sovereign immunity and, if it is, whether this appeal should be transferred to the Federal Circuit under 28 U.S.C. §1631." *Talley v. U.S. Dep't of Agric.*, 595 F.3d 754 (7th Cir. 2010) (reh'g en banc granted, opinion vacated, June 10, 2010). As of the date of this opinion, the *Talley* case remains pending.

## II

The objective of FCRA is to "promote efficiency in the Nation's banking system and to protect consumer privacy." *TRW Inc. v. Andrews*, 534 U.S. 19, 23 (2001). The 1970 Act originally regulated "consumer reporting agenc[ies]," or "any person" who assembles or evaluates personal information about consumers that is used to determine eligibility for credit and insurance, among other purposes. 15 U.S.C. § 1681a(d),(f) (2006). FCRA also originally imposed duties on "persons," for example, prohibiting a person from furnishing any information about consumers "to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s-2(a)(1)(A) (2006). The Act defined the term "person" in FCRA to mean "*any* individual, partnership, corporation, trust, estate cooperative association, *government or governmental subdivision or agency*, or other entity." 15 U.S.C. § 1681a(b) (2006) (emphases added). As originally enacted, however, the damages provisions for willful or negligent noncompliance with FCRA only covered "consumer reporting agenc[ies]" or "user[s] of information." Sections 616 and 617 of Pub. L. 91-508, 84 Stat. 1114, 1134 (1970).

In 1996, an amendment to FCRA made, among other things, the damages provisions applicable to "[a]ny person." Consumer Credit Reporting Reform Act of 1996, Section 2412 of Pub. L. 104-208, 110 Stat. 3009-446. Specifically, FCRA now provides as follows:

(a) In general

*Any person* who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—

(1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or

(B) in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater;

(2) such amount of punitive damages as the court may allow; and

(3) in the case of any successful action to enforce any liability under this section, the costs of the action together with rea-

sonable attorney's fees as determined by the court.

15 U.S.C. § 1681n (emphasis added).

In 2003, another amendment to FCRA added § 1681c(g)(1), the liability provision at issue in this case. Fair and Accurate Credit Transactions Act of 2003, Section 113 of Pub. L. 108-159, 117 Stat. 1959. That provision states:

Except as otherwise provided in this subsection, *no person* that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.

*Id.* (emphasis added).

### III

The Little Tucker Act, 28 U.S.C. § 1346, gives the district courts jurisdiction, concurrent with the Court of Federal Claims, over "any other [than tax refund] civil action or claim against the United States, not exceeding $10,000 in amount, founded . . . upon any Act of Congress." The Little Tucker Act is therefore a jurisdictional provision that also operates "to waive sovereign immunity for claims premised on other sources of law (e.g., statutes or contracts)." *United States v. Navajo Nation,* 129 S. Ct. 1547, 1551 (2009).

The three commonly-named sections of the Tucker Act are similar. The Indian Tucker Act, 28 U.S.C. § 1505, the Big Tucker Act, 28 U.S.C. § 1491, and the Little Tucker Act, 28 U.S.C. § 1346(a)(2), each grant the Court of Federal Claims jurisdiction over specific causes of action against the United States. The Indian Tucker Act grants

the Court of Federal Claims exclusive jurisdiction over all Indian claims against the United States. 28 U.S.C. § 1505. The Big Tucker Act grants exclusive jurisdiction to the Court of Federal Claims to money claims against the United States exceeding $10,000. *Jarrett v. White*, 57 Fed. App'x. 87, 88 n.1 (3d Cir. 2003). The Little Tucker Act grants concurrent jurisdiction to district courts and the Court of Federal Claims, to money claims against the United States not exceeding $10,000. *Id.* at 88. This court examines cases under the Indian and Big Tucker Acts to help resolve this appeal.

Because the Little Tucker Act operates to waive sovereign immunity, the district court erred in dismissing Bormes' case without considering whether the Little Tucker Act provided an alternative basis for jurisdiction. If the Little Tucker Act authorizes the district court to hear this case, it also provides the waiver of sovereign immunity that the trial court found lacking in the FCRA itself. *See United States v. Mitchell*, 463 U.S. 206, 216 (1983) ("If a claim falls within the terms of the Tucker Act, the United States has presumptively consented to suit.").

To support jurisdiction under the Little Tucker Act, the substantive law that provides the basis for the plaintiff's claims must be "money-mandating." *Fisher v. United States,* 402 F.3d 1167, 1172 (Fed. Cir. 2005). A source of law is money-mandating if it "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *United States v. White Mountain Apache Tribe,* 537 U.S. 465, 472 (2003) (quotation omitted). This "fair interpretation" rule demands a showing "demonstrably lower" than the initial waiver of sovereign immunity: "It is enough . . . that a statute creating a Tucker Act right be reasonably amenable to the reading that it mandates a right of recovery in

damages. While the premise to a Tucker Act claim will not be 'lightly inferred,' . . . a fair inference will do." *Id.* In most money-mandating inquiries, the statute at issue clearly imposes duties of some kind on the federal government; the main questions become the extent of those duties and the availability of a money remedy in the event of a breach of those duties.

In *White Mountain*, for example, the act at issue expressly stated that the "'former Fort Apache Military Reservation' would be 'held by the United States in trust for the White Mountain Apache Tribe.'" 537 U.S. at 469 (quoting Pub. L. 86-392, 74 Stat. 8). The Court was asked whether that trust relationship could be fairly interpreted to subject the government to liability in money damages for failing to preserve the trust property. *Id.* at 475. The Court determined that such an interpretation was fair, relying on "elementary trust law." *Id.*

In *Army and Air Force Exchange Service (AAFES) v. Sheehan*, the Court held AAFES regulations governing separation procedures for certain military post exchange employees did not constitute an express or implied-in-fact contract and thus did not authorize the award of money damages in the event of a Government breach. 456 U.S. 728, 738 (1982). The Court held that "jurisdiction over respondent's complaint cannot be premised on the asserted violation of regulations that do not specifically authorize awards of money damages." *Id.* at 739. Although the Court in *Sheehan* looked for a "specific[] authoriz[ation]" of money damages, 456 U.S. at 739, the Court clarified in *White Mountain* that "an explicit provision for money damages" is not needed in every case. 537 U.S. at 477. Rather, "a fair inference will require an express provision, when the legal current is otherwise against the existence of a cognizable claim." *Id.*

This court often addresses another type of money-mandating question: whether the plaintiff is within the class of plaintiffs entitled to recover under a statute that provides for money damages. Thus, in *Greenlee County, Arizona v. United States*, 487 F.3d 871 (Fed. Cir. 2007), this court confirmed the jurisdiction of the Court of Federal Claims because the statute at issue provided that "'the Secretary of the Interior *shall make a payment* for each fiscal year to each unit of general local government in which entitlement land is located as set forth in this chapter,'" *id.* at 877 (quoting 31 U.S.C. § 6902(a)(1) (emphasis added)), and the plaintiff had clearly been designated a "unit of general local government." *Id.* Moreover, the court held that the statute clearly mandated money damages because, as "we have repeatedly recognized[,] . . . the use of the word 'shall' generally makes a statute money-mandating." *Id.*

This case poses more difficult questions. Section 1618n unquestionably provides for money damages. Moreover, the record shows that, at least for jurisdiction, Bormes fits within the class of plaintiffs entitled to recover under the statute. *See Greenlee County*, 487 F.3d at 877 ("[W]here plaintiffs have invoked a money-mandating statute and have made a non-frivolous assertion that they are entitled to relief under the statute, we have held that the Court of Federal Claims has subject-matter jurisdiction over the case.") (quotations omitted)). As discussed below, the government does dispute the adequacy of Bormes's statement of a claim under section 1681c(g)(1). That dispute, however, is not jurisdictional. Instead, this case asks whether the federal government is subject to the damages remedy.

This court refers to the cases above to gain insight into the kind of language that makes a statute money-mandating under the "fair interpretation" standard.

Likewise, the government invokes *LeBlanc v. United States*, 50 F.3d 1025 (Fed. Cir. 1995), to support its position. In *LeBlanc*, the plaintiff was a former employee of the government's Defense Contract Administration Service. Mr. LeBlanc alleged that he was fired in retaliation for his earlier suit against a government contractor under the False Claims Act. Mr. LeBlanc sued the government for wrongful termination, seeking, among other things, reinstatement and back pay. Mr. LeBlanc contended that the following language from the False Claims Act was money-mandating: "*Any employee* who is discharged . . . by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section . . . shall be entitled to all relief necessary to make the employee whole." *Id.* at 1029 (quoting 31 U.S.C. § 3730(h)) (emphasis added). The court noted, however, that another statute, the Civil Service Reform Act of 1978 (CSRA), "essentially preempted the field" of providing procedural protections for civil service employees faced with adverse personnel actions. *Id.* at 1029. Absent a "clear statement in section 3730(h) of a congressional intent to create a remedy for *federal* employees in addition to those provided in the CSRA," this court declined to interpret the Act to mandate monetary compensation by the federal government for any damages. *Id.* at 1030.

Section 1618n resembles the provisions at issue in *White Mountain* and *Greenlee County* more than those in *Sheehan* or *LeBlanc*. Unlike *LeBlanc*, for example, where the Act gave no indication that the term "any employee" would include federal employees, in this case the Act expressly defines the term "person" to include "any . . . government." § 1681a(b). Similarly, and unlike *Sheehan*, this case does not lack a "specific authorization." Rather, government counsel agreed at oral argument that the

reference to "any . . . government" in § 1681a(b)'s definition of "person" refers to the federal government. Oral Argument at 14:18-15:30 & 18:40-19:07, *available at* http://www.cafc.uscourts.gov/. Indeed, the same attorney, in oral argument before the U.S. Court of Appeals for the Seventh Circuit in the *Talley* case, noted that the definition of "person" in section 1681a(b) "subject[s] the United States to [FCRA's] substantive provisions." Oral Argument at 10:50, *Talley v. U.S. Dep't of Agric.*, 595 F.3d 754 (No. 09-2123), *available at* http://www.ca7.uscourts.gov/. Once this court reads "person" as including the federal government in some provisions, a fair interpretation, based on "elementary" rules of statutory interpretation, *White Mountain*, 537 U.S. at 475, applies the same definition throughout. *See Burgess v. United States*, 553 U.S. 124, 129 (2008) ("Statutory definitions control the meaning of statutory words . . . in the usual case.") (alterations in original; internal quotation marks omitted)). Moreover, as in *Greenlee County*, the Act used the mandatory "shall" in its damages provision--another indication that the law envisions monetary redress for violations. As Chief Judge Easterbrook succinctly stated in the vacated *Talley* opinion, "Congress need not add 'we really mean it!' to make statutes effectual." 595 F.3d at 758.

The government argues that the FCRA cannot be money-mandating because it contains a distinctive grant of jurisdiction to federal district courts. Specifically, section 1681p states, in relevant part, "[a]n action to enforce any liability created under this subchapter may be brought in any appropriate United States district court, without regard to the amount in controversy, or in any other court of competent jurisdiction." The government relies on this court's opinion in *Blueport Co. v. United States*, which, in the context of holding that the Digital Millennium Copyright Act (DMCA) is not money-

mandating, stated that "the CFC lacks jurisdiction to adjudicate claims created by statutes, like the DMCA, which specifically authorize jurisdiction in the district courts." 533 F.3d 1374, 1384 (2008).

*Blueport* does not control in this case. Because the Big Tucker Act and Little Tucker Act follow the same rules, this court may ask if *Blueport* would prevent the Court of Federal Claims from exercising jurisdiction if Bormes had initiated his case in that court. If *Blueport* would block jurisdiction in the Court of Federal Claims under the Big Tucker Act, then it would also prevent a district court from exercising jurisdiction (and finding the concomitant waiver of sovereign immunity) in the Little Tucker Act. This court need not, however, reach that conclusion.

*Blueport* does not apply because the jurisdictional grant in FCRA is not "like the DMCA." *Id.* Instead, the former grants jurisdiction to "any appropriate United States district court, without regard to the amount in controversy, or *in any other court of competent jurisdiction.*" 15 U.S.C. § 1681p (emphasis added).

The government asserts that "any other court of competent jurisdiction" refers to state court jurisdiction rather than other federal tribunals. The government explains that the Supreme Court interpreted the phrase "any other court of competent jurisdiction" as "provid[ing] for concurrent federal-court and state-court jurisdiction over civil liability suits." *Bank One Chicago N.A. v. Midwest Bank & Trust Co.*, 516 U.S. 264, 268, 275 (1996). The government also argues because the FCRA grants jurisdiction to federal courts without regard to the amount in controversy, it could not have intended to grant jurisdiction to the Court of Federal Claims, because the

Tucker Act grants jurisdiction to the Court of Federal Claims only for claims over $10,000.

Moreover, FCRA initially contained an amount-in-controversy requirement for federal-question suits as well as diversity suits. That amount-in-controversy requirement thus explains the jurisdictional grant in the FCRA to district courts "without regard to the amount in controversy," for without that language, FCRA claims below the amount-in-controversy requirement would have been relegated to state courts.

In 1980, however, the jurisdictional minimum for federal-question cases was rescinded. Section 2(a) of Pub.L. 96-486, 94 Stat. 2369 (1980). If the "amount in controversy" language is to retain meaning, the government argues, it should now refer to the amount-in-controversy requirement that distinguishes Big Tucker Act from Little Tucker Act cases and should indicate that Congress meant to take suits for over $10,000 out of the CFC's jurisdiction, and thus out of the scope of the Tucker Act.

We conclude that the Court of Federal Claims is a court of competent jurisdiction for purposes of this statute. As the motions panel in this case noted, "[t]he Court [in *Bank One*] did not state . . . that federal courts other than the district courts would not also have concurrent jurisdiction over such cases." 2010 WL 331771, at *2. Moreover, this court will not hold that the Act impliedly repealed the jurisdictional grant of the Tucker Act for enforcement of FCRA rights simply because the FCRA does not contain an amount-in-controversy requirement. *See Preseault v. ICC*, 494 U.S. 1, 12 (1990) ("Congress did not exhibit the type of 'unambiguous intention to withdraw the Tucker Act remedy that is necessary to preclude a Tucker Act claim.") (internal quotations and citations omitted)).

As discussed, a fair interpretation of FCRA mandates money damages from the federal government for damages. This conclusion withstands an attack based on arguments about an "express" waiver of sovereign immunity in FCRA. As discussed earlier, the test for a money-mandating statute is less stringent than the test for a waiver of sovereign immunity in the same statute.

In this connection, this court notes that the 1996 and 2003 amendments subjected "persons" who print receipts to liability. Of course, under FCRA's unique definition of "person," a sovereign, namely the United States, would also face potential liability. *See USPS v. Flamingo Indus. (USA) Ltd.*, 540 U.S. 736, 745-46 (2004). Thus, a question arises about the sufficiency of this waiver and the particular clarity needed to infer a waiver of sovereign immunity when considering statutory amendments that change the ordinary meaning of preexisting provisions. *See Emp's of the Dep't of Public Health & Welfare v. Dep't of Public Health & Welfare*, 411 U.S. 279 (1973). Whatever strength this argument has in considering the sufficiency of FCRA's waiver of sovereign immunity, it is not compelling in the context of determining FCRA's mandate of money damages.

This court is also aware that FCRA provides for punitive and criminal punishment, which cannot be imposed upon the government under the Tucker Act. *See Brown v. United States*, 105 F.3d 621, 623 (Fed. Cir. 1997) (holding that Tucker Act is "limited to cases in which the Constitution or a federal statute requires the payment of money damages *as compensation for their* violation") (emphasis added)). This limitation on Tucker Act remedies does not mean that FCRA is not money-mandating. Rather this limitation means that FCRA's money-mandating provisions do not extend beyond certain types of claims, such as those at issue in this case. *See Talley*, 595 F.3d at 761

("As we see things . . . [the government's argument] means only that punitive damages are unavailable against the United States unless the Tucker Act authorizes them.").

Similarly, FCRA permits recovery for negligence, but the Tucker Act does not permit negligence claims. *See Rick's Mushroom Serv. v. United States*, 521 F.3d 1338, 1343 (Fed. Cir. 2008). As the vacated opinion in *Talley* also noted, however, a negligence claim is different than a statutory claim that includes an element which is analyzed under a negligence standard. 595 F.3d at 761.

In addition, a separate FCRA provision expressly provides for remedies against the United States. Specifically, section 1681u requires consumer reporting agencies to furnish consumer credit information to the Federal Bureau of Investigation, but limits the FBI's response tools. In imposing liability on "[a]ny agency or department of the United States," FCRA limits statutory damages to $100 and provides actual and punitive damages. 15 U.S.C. § 1681u(i). With respect to this language, the government argues that Congress knew how to subject the United States to damages when it wanted to do so. To the contrary, however, this provision shows only that Congress presumably needed to create a different remedial scheme in section 1681u because that section specifically limits what the government can do with credit information. This different scheme does not mean that the Act did not speak broadly enough to include the United States when it prohibited certain "persons" from use of credit information.

Finally, the government argues that different statutes of limitations govern Tucker Act claims and FCRA claims. Under section 1681p, a FCRA action must be commenced either two years after the plaintiff discovers the violation,

or within five years after the date on which the alleged FCRA violation occurs. In contrast, a default six-year statute of limitations applies to Tucker Act claims. 28 U.S.C. § 2401(a). The vacated *Talley* opinion convincingly dealt with this argument as well, noting that "different statutes of limitations are common in federal practice, and the rule is that the more specific limit prevails, not that a short limit cancels out any substantive statute." 595 F.3d at 760 (citing *United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1 (2008)). This court adopts the same reasoning in support of the statutory language and context that makes the FCRA money-mandating.

## IV

The parties have also briefed whether Bormes' claim should be dismissed for failure to state a claim upon which relief can be granted. Specifically, the government contends that the alleged wrongful action in this case—providing credit card information that is displayed on a consumer's computer screen—does not qualify as a willful violation of 15 U.S.C. § 1681c(g)(1), which requires "print[ing] more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction."

Whether a case must be dismissed under Rule 12(b)(6) is a question of law that this court may answer in the first instance. *See* Fed. R. Civ. P. 12(b)(6) advisory committee's note; *Highland Falls-Fort Montgomery Cent. Sch. Dist. v. United States*, 48 F.3d 1166, 1170 (Fed. Cir. 1995) (determining whether a complaint was properly dismissed under Rule 12(b)(6) is a question of law that the court reviews independently); *see also Thompson v. Microsoft Corp.*, 471 F.3d 1288, 1291 (Fed. Cir. 2006) (addressing a question of law regarding jurisdiction in the first instance). Nonetheless, the government, both in its brief

and at oral argument, asked this court for the opportunity to fully develop its Rule 12(b)(6) arguments before the district court.    This court decides to give weight to the moving party's preference in this case, and will allow the district court to consider first the government's motion to dismiss on that additional ground, as well as any others that have not been waived.  Thus, this court vacates the judgment and remands for further proceedings.

## **VACATED AND REMANDED**