(Slip Opinion) OCTOBER TERM, 2012 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## UNITED STATES *v.* BORMES

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

No. 11–192.  Argued October 2, 2012—Decided November 13, 2012

Respondent Bormes, an attorney, filed suit against the Federal Government, alleging that the electronic receipt he received when paying his client's federal-court filing fee on Pay.gov included the last four digits of his credit card number and the card's expiration date, in willful violation of the Fair Credit Reporting Act (FCRA), 15 U. S. C. §1681 *et seq.*  He sought damages under §1681n and asserted jurisdiction under §1681p, as well as under the Little Tucker Act, which grants district courts "original jurisdiction, concurrent with the United States Court of Federal Claims, of . . . [a]ny . . . civil action or claim against the United States, not exceeding $10,000 in amount, founded . . . upon . . . any Act of Congress," 28 U. S. C. §1346(a)(2).  In dismissing the suit, the District Court held that FCRA did not explicitly waive the Federal Government's sovereign immunity.  Bormes appealed to the Federal Circuit, which vacated the District Court's decision, holding that the Little Tucker Act provided the Government's consent to suit because the underlying statute—FCRA—could fairly be interpreted as mandating a right of recovery in damages.

*Held*: The Little Tucker Act does not waive the Government's sovereign immunity with respect to FCRA damages actions.  Pp. 4–11.

  (a) The Little Tucker Act and its companion statute, the Tucker Act, provide the Federal Government's consent to suit for certain money-damages claims "premised on other sources of law," *United States* v. *Navajo Nation*, 556 U. S. 287, 290.  The general terms of the Tucker Acts are displaced, however, when a law imposing monetary liability has its own judicial remedies.  In that event, the specific remedial scheme establishes the exclusive framework for determining the scope of liability under the statute.  See, *e.g., Hinck* v. *United States*, 550 U. S. 501.  Pp. 4–7.

Syllabus

(b) FCRA is such a statute. Its detailed remedial scheme sets "out a carefully circumscribed, time-limited, plaintiff-specific" cause of action, and "also precisely define[s] the appropriate forum," 550 U. S., at 507. FCRA authorizes aggrieved consumers to hold "any person" who "willfully" or "negligent[ly]" fails to comply with the Act's requirements liable for specified damages, 15 U. S. C. §§1681n(a), 1681*o*; requires enforcement claims to be brought within a specified limitations period, §1681p; and provides that jurisdiction will lie "in any appropriate United States district court, without regard to the amount in controversy," *ibid.* Because FCRA enables claimants to pursue monetary relief in court without resort to the Tucker Act, only *its own* text can determine whether Congress unequivocally intended to impose the statute's damages liability on the Federal Government. Pp. 7–10.

626 F. 3d 574, vacated and remanded.

SCALIA, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 11–192

UNITED STATES, PETITIONER *v.* JAMES X. BORMES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FEDERAL CIRCUIT

[November 13, 2012]

JUSTICE SCALIA delivered the opinion of the Court.

The Little Tucker Act, 28 U. S. C. §1346(a)(2), provides that "[t]he district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of . . . [a]ny. . . civil action or claim against the United States, not exceeding $10,000 in amount, founded . . . upon . . . any Act of Congress." We consider whether the Little Tucker Act waives the sovereign immunity of the United States with respect to damages actions for violations of the Fair Credit Reporting Act (FCRA), 15 U. S. C. §1681 *et seq.*

I

The Fair Credit Reporting Act has as one of its purposes to "protect consumer privacy." *Safeco Ins. Co. of America* v. *Burr*, 551 U. S. 47, 52 (2007); see 84 Stat. 1128, 15 U. S. C. §1681. To that end, FCRA provides, among other things, that "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number *or* the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." §1681c(g)(1) (emphasis added). The Act defines "person" as "any individual, partnership,

corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." §1681a(b).

FCRA imposes civil liability for willful or negligent noncompliance with its requirements: "Any person who willfully fails to comply" with the Act "with respect to any consumer," "is liable to that consumer" for actual damages or damages "of not less than $100 and not more than $1,000," as well as punitive damages, attorney's fees, and costs. §1681n(a); see also §1681*o* (civil liability for negligent noncompliance). The Act includes a jurisdictional provision, which provides that "[a]n action to enforce any liability created under this subchapter may be brought in any appropriate United States district court, without regard to the amount in controversy, or in any other court of competent jurisdiction" within the earlier of "2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability" or "5 years after the date on which the violation that is the basis for such liability occurs." §1681p.

Respondent James X. Bormes is an attorney who filed a putative class action against the United States in the United States District Court for the Northern District of Illinois seeking damages under FCRA. Bormes alleged that he paid a $350 federal-court filing fee for a client using his own credit card on Pay.gov, an Internet-based system used by federal courts and dozens of federal agencies to process online payment transactions. According to Bormes, his Pay.gov electronic receipt included the last four digits of his credit card, *in addition to* its expiration date, in willful violation of §1681c(g)(1). He claimed that he and thousands of similarly situated persons were entitled to recover damages under §1681n, and asserted jurisdiction under §1681p, as well as under the Little Tucker Act, 28 U. S. C. §1346(a)(2).

The District Court dismissed the suit, holding that

FCRA does not contain the explicit waiver of sovereign immunity necessary to permit a damages suit against the United States. 638 F. Supp. 2d 958, 962 (ND Ill. 2009). The court did not address the Little Tucker Act as an asserted basis for jurisdiction. Respondent appealed to the Federal Circuit, which has exclusive jurisdiction "of an appeal from a final decision of a district court of the United States . . . if the jurisdiction of that court was based, in whole or in part, on" the Little Tucker Act. 28 U. S. C. §1295(a)(2). Arguing that the Little Tucker Act's jurisdictional grant did not apply to respondent's suit, the Government moved to transfer the appeal to the Seventh Circuit.

The Federal Circuit denied the transfer motion and went on to vacate the District Court's decision. Without deciding whether FCRA itself contained the requisite waiver of sovereign immunity, the court held that the Little Tucker Act provided the Government's consent to suit for violation of FCRA. The court explained that the Little Tucker Act applied because FCRA "'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" 626 F. 3d 574, 578 (2010) (quoting *United States* v. *White Mountain Apache Tribe*, 537 U. S. 465, 472 (2003)). This "fair interpretation" rule, the court explained, "demands a showing 'demonstrably lower' than the initial waiver of sovereign immunity" contained in the Little Tucker Act itself. 626 F. 3d, at 578. The court reasoned that FCRA satisfied the "fair interpretation" rule because its damages provision applies to "any person" who willfully violates its requirements, 15 U. S. C. §1681n(a), and the Act elsewhere defines "person" to include "any . . . government," §1681a(b). 626 F. 3d, at 580. The Federal Circuit remanded to the District Court for further proceedings. We granted certiorari, 565 U. S. \_\_\_ (2012).

## II

Sovereign immunity shields the United States from suit absent a consent to be sued that is "'unequivocally expressed.'" *United States* v. *Nordic Village, Inc.*, 503 U. S. 30, 33–34 (1992) (quoting *Irwin* v. *Department of Veterans Affairs*, 498 U. S. 89, 95 (1990); some internal quotation marks omitted). The Little Tucker Act is one statute that unequivocally provides the Federal Government's consent to suit for certain money-damages claims. *United States* v. *Mitchell*, 463 U. S. 206, 216 (1983) (*Mitchell II*). Subject to exceptions not relevant here, the Little Tucker Act provides that "district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims," of a "civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U. S. C. §1346(a)(2).[1] The Little Tucker Act and its companion statute, the Tucker Act, §1491(a)(1),[2] do not themselves "creat[e] substantive rights," but "are simply jurisdictional provisions that operate to waive

---

[1] It is undisputed that this class action satisfied the Little Tucker Act's amount-in-controversy limitation. We have held that to require only that the "claims of individual members of the clas[s] do not exceed $10,000." *United States* v. *Will*, 449 U. S. 200, 211, n. 10 (1980).

[2] Whereas the Little Tucker Act creates jurisdiction in the district courts concurrent with the Court of Federal Claims for covered claims of $10,000 or less, the Tucker Act assigns jurisdiction to the Court of Federal Claims regardless of monetary amount. As relevant here, the scope of the two statutes is otherwise the same. The third statute in the Tucker Act trio, the Indian Tucker Act, 28 U. S. C. §1505, "confers a like waiver for Indian tribal claims that 'otherwise would be cognizable in the Court of Federal Claims if the claimant were not an Indian tribe.'" *United States* v. *White Mountain Apache Tribe*, 537 U. S. 465, 472 (2003) (quoting §1505).

sovereign immunity for claims premised on other sources of law." *United States* v. *Navajo Nation*, 556 U. S. 287, 290 (2009).

Bormes argues that whether or not FCRA itself unambiguously waives sovereign immunity, the Little Tucker Act authorizes his FCRA damages claim against the United States. The question, then, is whether a damages claim under FCRA "falls within the terms of the Tucker Act," so that "the United States has presumptively consented to suit." *Mitchell II*, *supra*, at 216. It does not. Where, as in FCRA, a statute contains its own self-executing remedial scheme, we look only to that statute to determine whether Congress intended to subject the United States to damages liability.

## A

The Court of Claims was established, and the Tucker Act enacted, to open a judicial avenue for certain monetary claims against the United States. Before the creation of the Court of Claims in 1855, see Act of Feb. 24, 1855 (1855 Act), ch. 122, §1, 10 Stat. 612, it was not uncommon for statutes to impose monetary obligations on the United States without specifying a means of judicial enforcement.[3] As a result, claimants routinely petitioned Congress for private bills to recover money owed by the Federal Government. See *Mitchell II*, *supra*, at 212 (citing P. Bator, P. Mishkin, D. Shapiro & H. Wechsler, Hart and

------

[3] For example, the Act of March 30, 1814, provided that every noncommissioned U. S. army officer who "may be captured by the enemy, shall be entitled to receive during his captivity . . . the same pay, subsistence, and allowance to which he may be entitled whilst in the actual service of the United States." §14, 3 Stat. 115, repealed in 1962 by Pub. L. 87–649, §14, 76 Stat. 498. The 1814 Act clearly "command[ed] the payment of a specified amount of money by the United States," *Bowen* v. *Massachusetts*, 487 U. S. 879, 923 (1988) (SCALIA, J., dissenting), but did not designate a means of judicial relief in the event the Government failed to pay.

Wechsler's The Federal Courts and the Federal System 98 (2d ed. 1973)).  As this individualized legislative process became increasingly burdensome for Congress, the Court of Claims was created "to relieve the pressure on Congress caused by the volume of private bills."  *Glidden Co.* v. *Zdanok*, 370 U. S. 530, 552 (1962) (plurality opinion).  The 1855 Act authorized the Court of Claims to hear claims against the United States "founded upon any law of Congress," §1, 10 Stat. 612, and thus allowed claimants to sue the Federal Government for monetary relief premised on other sources of law.  (Specialized legislation remained necessary to authorize the payments approved by the Court of Claims until 1863, when Congress empowered the court to enter final judgments.  See Act of Mar. 3, 1863 (1863 Act), ch. 92, 12 Stat. 765; *Mitchell II*, *supra*, at 212–214 (recounting the history of the Court of Claims)).

Enacted in 1887, the Tucker Act was the successor statute to the 1855 and 1863 Acts and replaced most of their provisions.  See Act of Mar. 3, 1887 (1887 Act), ch. 359, 24 Stat. 505; *Mitchell II*, *supra*, at 213–214.  Like the 1855 Act before it, the Tucker Act provided the Federal Government's consent to suit in the Court of Claims for claims "founded upon . . . any law of Congress."  1887 Act §1, 24 Stat. 505.  Section 2 of the 1887 Act created concurrent jurisdiction in the district courts for claims of up to $1,000.  The Tucker Act's jurisdictional grant, and accompanying immunity waiver, supplied the missing ingredient for an action against the United States for the breach of monetary obligations not otherwise judicially enforceable.[4]

_____

[4] For purposes of this case, the current versions of the Tucker Act and Little Tucker Act resemble the 1887 Act.  Compare 28 U. S. C. §1491(a)(1) (permitting suits "founded . . . upon . . . any Act of Congress") with Tucker Act §1, 24 Stat. 505 (permitting suits "founded upon . . . any law of Congress, except for pensions").  The prior functions of the Court of Claims are now divided between the Court of Federal Claims at the trial level and the Federal Circuit at the appellate.

### B

The Tucker Act is displaced, however, when a law assertedly imposing monetary liability on the United States contains its own judicial remedies. In that event, the specific remedial scheme establishes the exclusive framework for the liability Congress created under the statute. Because a "precisely drawn, detailed statute pre-empts more general remedies," *Hinck* v. *United States*, 550 U. S. 501, 506 (2007) (quoting *EC Term of Years Trust* v. *United States*, 550 U. S. 429, 434 (2007); internal quotation marks omitted), FCRA's self-executing remedial scheme supersedes the gap-filling role of the Tucker Act.

We have long recognized that an additional remedy in the Court of Claims is foreclosed when it contradicts the limits of a precise remedial scheme. In *Nichols* v. *United States*, 7 Wall. 122, 131 (1869), the issue was whether the 1855 Act authorized suit in the Court of Claims for improper assessment of duties on imported liquor that had already been paid without protest. The Court held that it did not. The revenue laws already provided a remedy: An aggrieved merchant could sue to recover the tax, but only after paying the duty under protest. Act of Feb. 26, 1845, ch. 22, 5 Stat. 727. The Court rejected the supposition that "Congress, after having carefully constructed a revenue system, with ample provisions to redress wrong, intended to give to the taxpayer and importer a further and different remedy." 7 Wall., at 131. Permitting suit under the 1855 Act, the Court concluded, would frustrate congressional intent with respect to the specific remedial scheme already in place. The 1855 Act was confined to a gap-filling role. As we said in a later case, "the general laws which govern the Court of Claims may be resorted to for relief" only because "[n]o special remedy has been provided" to enforce a payment to which the claimant was entitled. *United States* v. *Kaufman*, 96 U. S. 567, 569 (1878). Where the "liability is one created by statute," the

"special remedy provided by the same statute is exclusive."
*Ibid.*

Our more recent cases have consistently held that statutory schemes with their own remedial framework exclude alternative relief under the general terms of the Tucker Act.  See, *e.g.*, *Hinck*, *supra*; *United States* v. *Fausto*, 484 U. S. 439 (1988); *United States* v. *Erika, Inc.*, 456 U. S. 201 (1982).  Respondent contends that in each of those cases Congress had unambiguously demonstrated its intent to foreclose additional review by the Court of Federal Claims—whereas here, no similar intent to preclude Tucker Act jurisdiction is apparent.  See Brief for Respondent 27–28.  But our precedents collectively stand for a more basic proposition: Where a specific statutory scheme provides the accoutrements of a judicial action, the metes and bounds of the liability Congress intended to create can only be divined from the text of the statute itself.[5]

In *Hinck*, for example, we held that the Tax Court provides the exclusive forum for suits under 26 U. S. C. §6404(h), which authorizes judicial review of the Secretary's decision not to abate interest under §6404(e)(1).  We relied on "our past recognition that when Congress enacts a specific remedy when no remedy was previously recognized . . . the remedy provided is generally regarded as

———————————

[5] We therefore need not resolve the parties' disagreement about whether certain inconsistencies between the Little Tucker Act and FCRA can be reconciled.  Compare 28 U. S. C. §1346(a)(2) (no claims in district court "exceeding $10,000 in amount") with 15 U. S. C. §1681p (claims may be brought in district court "without regard to the amount in controversy"); compare 28 U. S. C. §2501 (claims must be filed in the Court of Federal Claims within six years of accrual) with 15 U. S. C. §1681p (claims under FCRA must be filed within the earlier of two years after discovery or five years after the alleged violation).  Reconcilable or not, FCRA governs.  The Government also contends that the Tucker Act does not apply because §§1681n and 1681*o* sound in tort. We do not decide the merits of that alternative argument.

exclusive." 550 U. S., at 506. Section 6404(h), we concluded, "fits the bill": it "provides a forum for adjudication, a limited class of potential plaintiffs, a statute of limitations, a standard of review, and authorization for judicial relief." *Ibid.* It did not matter that Congress "fail[ed] explicitly to define the Tax Court's jurisdiction as exclusive." *Ibid.* We found it "quite plain that the terms of §6404(h)—a 'precisely drawn, detailed statute' filling a perceived hole in the law—control all requests for review of §6404(e)(1) determinations." *Ibid.*

Like §6404(h), FCRA creates a detailed remedial scheme. Its provisions "set out a carefully circumscribed, time-limited, plaintiff-specific" cause of action, and "also precisely define the appropriate forum." *Id.*, at 507. It authorizes aggrieved consumers to hold "any person" who "willfully" or "negligent[ly]" fails to comply with the Act's requirements liable for specified damages. 15 U. S. C. §§1681n(a), 1681*o*. Claims to enforce liability must be brought within a specified limitations period, §1681p, and jurisdiction will lie "in any appropriate United States district court, without regard to the amount in controversy, or in any other court of competent jurisdiction." *Ibid.* Without resort to the Tucker Act, FCRA enables claimants to pursue in court the monetary relief contemplated by the statute.

Plaintiffs cannot, therefore, mix and match FCRA's provisions with the Little Tucker Act's immunity waiver to create an action against the United States. Since FCRA is a detailed remedial scheme, only *its own* text can determine whether the damages liability Congress crafted extends to the Federal Government. To hold otherwise— to permit plaintiffs to remedy the absence of a waiver of sovereign immunity in specific, detailed statutes by pleading general Tucker Act jurisdiction—would transform the sovereign-immunity landscape.

The Federal Circuit was therefore wrong to conclude

that the Tucker Act justified applying a "less stringent" sovereign-immunity analysis to FCRA than our cases require. 626 F. 3d, at 582. It distorted our case law in applying to FCRA the immunity-waiver standard we expressed in *White Mountain Apache Tribe*, 537 U. S., at 472: whether the statute "'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" 626 F. 3d, at 578. That is the test for determining whether a statute that imposes an obligation but does not provide the elements of a cause of action qualifies for suit under the Tucker Act—more specifically, whether the failure to perform an obligation undoubtedly imposed on the Federal Government creates a right to monetary relief. See *White Mountain Apache Tribe*, *supra*; *Mitchell II*, 463 U. S. 206. That test is not relevant when a "mandate of compensation" is contained in a statute that provides a detailed judicial remedy against those who are subject to its requirements. FCRA is such a statute. By using the "fair interpretation" test to determine whether FCRA's civil liability provisions apply to the United States, the Federal Circuit directed the test to a purpose for which it was not designed and leapfrogged the threshold concern that the Tucker Act cannot be superimposed on an existing remedial scheme.

\*　　\*　　\*

We do not decide here whether FCRA itself waives the Federal Government's immunity to damages actions under §1681n. That question is for the Seventh Circuit to consider once this case is transferred to it on remand. But whether or not FCRA contains the necessary waiver of immunity, any attempt to append a Tucker Act remedy to the statute's existing remedial scheme interferes with its intended scope of liability.

The judgment of the Court of Appeals is vacated, and the case remanded with instructions to transfer the case to

the United States Court of Appeals for the Seventh Circuit for further proceedings consistent with this opinion.

*It is so ordered.*