In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-2007

COLUMBUS REGIONAL HOSPITAL,

*Plaintiff-Appellant*,

*v.*

FEDERAL EMERGENCY MANAGEMENT AGENCY,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:10-cv-01168-SEB-MJD—**Sarah Evans Barker**, *Judge*.

ARGUED SEPTEMBER 26, 2012—DECIDED FEBRUARY 20, 2013

Before EASTERBROOK, *Chief Judge*, and WOOD and
WILLIAMS, *Circuit Judges*.

EASTERBROOK, *Chief Judge*.   After a flood on June 6, 2008,
in southern Indiana, the President authorized the
Federal Emergency Management Agency to provide
disaster relief. The Stafford Act, 42 U.S.C. §§ 5121–5207,
establishes the terms on which financial aid is available.
Columbus Regional Hospital was awarded approxi-
mately $70 million. It contends in this suit that it is

entitled to about $20 million more. The district judge thought not and granted FEMA's motion for summary judgment.

The Hospital, the agency, and the district judge all assumed that a suit seeking money from the United States belongs in a district court. That was not clear to us, however, because the Tucker Act, 28 U.S.C. §§ 1346, 1491, allocates to the Court of Federal Claims any suit seeking more than $10,000 in money damages. (There is an exception for statutes that contain their own remedial provisions, see *United States v. Bormes*, 133 S. Ct. 12 (2012), but the Stafford Act is silent on remedies.) We issued an order directing the parties to file post-argument memoranda about subject-matter jurisdiction.

The Hospital told us that it has come to conclude that the Court of Federal Claims is the right forum, and it asks us to transfer the suit there. FEMA, by contrast, contends that the district court has jurisdiction. We agree with that view, which is consistent with 5 U.S.C. §702 and *Bowen v. Massachusetts*, 487 U.S. 879 (1988), though both the statute and the Supreme Court's opinion leave room for legitimate disagreement.

Section 702, which was added to the Administrative Procedure Act in 1976, waives sovereign immunity for a suit "seeking relief other than money damages and stating a claim that an agency . . . acted or failed to act" in conformity with law. Such a claim may proceed in a district court; only a request for "money damages" falls under the Tucker Act and is allocated to the Court of Federal Claims. But what does "money damages" mean?

*Bowen* holds that a suit can seek money without seeking "money damages." Massachusetts asserted that it had received less than its entitlement under the Medicaid program. The Supreme Court concluded that "damages" for the purpose of §702 and the Tucker Act are a "substitute for a suffered loss, whereas specific remedies [even if financial] 'are not substitute remedies at all, but attempts to give the plaintiff the very thing to which he was entitled.'" 487 U.S. at 895 (quoting from *Maryland Department of Human Resources v. Department of Health and Human Resources*, 763 F.2d 1441 (D.C. Cir. 1985)). So compensation for breach of contract is outside the scope of §702, see *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204, 212 (2002), while a demand for full payment under a grant-in-aid program such as Medicaid is a request for specific performance rather than damages. See also *Department of the Army v. Blue Fox, Inc.*, 525 U.S. 255 (1999) (§702 does not cover claims that seek a financial substitute for the legally required performance by the agency); *Veluchamy v. FDIC*, No. 10-3879 (7th Cir. Feb. 4, 2013), slip op. 9–14 (same).

Where does disaster relief under the Stafford Act stand? The Hospital wants money, but not as compensation for FEMA's failure to perform some other obligation. Instead the Hospital, like the state in *Bowen*, wants money as "the very thing to which he was entitled" under the disaster-relief program. The Hospital resists this conclusion, telling us that what mattered in *Bowen* was not the status of Medicaid as a grant-in-aid program, but the fact that the grants would continue. Thus resolving the state's dispute with

the Secretary about one year's allocation would govern future conduct as well. That's true enough, see 487 U.S. at 905, but the Court did not say that *only* a dispute about one year's component of a multi-year program could be raised under §702. Instead it distinguished between money as compensation for an injury, and money *as the entitlement* under a grant program. The Hospital asserts an entitlement to money under the Stafford Act. FEMA disagrees with the Hospital's substantive position, but if its claim fails on the merits that does not retroactively divest the district court of jurisdiction. See *Bell v. Hood*, 327 U.S. 678 (1946).

To the extent practical considerations matter, they favor jurisdiction in the district court. The Hospital invokes not only the Stafford Act but also the APA and the Federal Tort Claims Act, 28 U.S.C. §§ 2671–80. The Court of Federal Claims has no jurisdiction over torts; a FTCA suit must be pursued in a district court. 28 U.S.C. §§ 1402(b), 2679. The Hospital's motion to transfer suggested that it could split its claim, with the Stafford Act proceeding in the Court of Federal Claims and the FTCA proceeding in a district court, and the APA theory attached to one or both of these via the doctrine of ancillary jurisdiction. But that's a dud: 28 U.S.C. §1500 requires a party to elect between proceeding in the district court and proceeding in the claims court. Once a proceeding is under way in the Court of Federal Claims, any other suit based on the same operative facts must be dismissed. See *United States v. Tohono O'odham Nation*, 131 S. Ct. 1723 (2011). Only the district court can serve as a forum for all of the Hospital's legal theories.

One last snag: the Hospital invokes the due process clause of the fifth amendment as a source of recovery. To the extent that this constitutional theory demands money as a remedy, it belongs in the Court of Federal Claims. To the extent that it seeks prospective relief, such as another hearing, it is within the scope of §702. This complicates the jurisdictional analysis, but we can simplify it again because the claim is so weak. The Hospital seems to think that the Constitution requires federal agencies to implement statutes and regulations correctly. That's wrong. See, e.g., *United States v. Caceres*, 440 U.S. 741, 749–55 (1979). FEMA's internal appeals apparatus afforded the Hospital all the process the Constitution demands, and to spare. The Hospital's "due process" claim could be relabeled "due substance", which tracks its claim under the Stafford Act. If we were to transfer the suit to the claims court just because of a constitutional theory carelessly appended to the complaint, at a time when neither side had given the Tucker Act a moment's thought, legitimate theories might be vaporized. We think it better to say that the Hospital's constitutional claim is so feeble that it does not invoke *any* federal court's jurisdiction—not the district court's, not the claims court's. See, e.g., *Hagans v. Lavine*, 415 U.S. 528, 542–43 (1974). With the due process theory gone, we deny the motion to transfer and proceed to the merits.

FEMA contends that the Hospital's suit fails at the threshold because of 42 U.S.C. §5148, which reads:

> The Federal Government shall not be liable for any claim based upon the exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of a Federal agency or an employee of the Federal Government in carrying out the provisions of this chapter.

According to FEMA, everything it does is "a discretionary function," so there can never be an obligation to pay more than the agency decides is due. Some functions undoubtedly are discretionary—for example, the President must decide when to declare a disaster and, if he does so, set its temporal and geographic boundaries. Many other activities under the statute, such as establishing the value of damaged property, also entail discretionary elements. But to leap from this to the proposition that *everything* FEMA does is discretionary would be unwarranted. The Hospital believes that its claim rests on mandatory rules, whether in the statute or created by regulation. (FEMA may establish duties where the Act is open-ended; that's how the Administrator can control the conduct of the staff in the field.) Section 5148 does not tell us whether the Hospital is right or wrong in believing that some rules tie the agency's hands. We must take up the Hospital's claims on the merits.

It has two. First, it contends that FEMA must cover the replacement cost of equipment and supplies destroyed by the flood. (Here the Hospital assumes that FEMA has discretion to decide which property has been damaged by flood waters; the Hospital's argument is limited to the choice between depreciated market value

and replacement cost for property that FEMA itself deems covered.) Second, it contends that FEMA should not have allocated any of its insurance proceeds to property damage. We consider these in turn.

FEMA reimburses disaster victims for value of the property lost—which FEMA calculates as cost (basis) less depreciation. That's the standard economic measure of loss. The Hospital deems it insufficient because, it says, FEMA's stance would compel it to buy used equipment to replace the lost gear, yet insurers and regulators (and prudent management) call for new medical equipment. Since it *must* replace the damaged equipment with new equipment, the Hospital contends, it is entitled to the cost of new equipment.

Perhaps FEMA might undertake to cover replacement cost, but it has not done so. It has made a judgment that depreciated cost is the measure of loss. The Hospital does not point to any statutory language, or any regulation, requiring FEMA to reimburse the cost of new equipment, so §5148 blocks this aspect of the Hospital's suit.

The best the Hospital can do is point to 42 U.S.C. §5151(a) and 44 C.F.R. §206.11(b), which it reads as requiring FEMA to cover victims' losses in an "equitable manner" and not discriminate on the basis of "economic status." A millionaire whose lawn mower is swept away gets the same payment as a grocer who loses the same model of lawn mower. This does not help the Hospital, however. It asked for *favorable* treatment, not the same treatment other businesses receive. If a fast-food

restaurant gets the depreciated value of a fryer or milkshake mixer, a hospital gets the depreciated value of a magnetic resonance imager. Applying the same valuation principles to all persons who lose property in a flood does not violate the statute or the regulation.

And FEMA's approach makes sense. It gives all victims the value of what they lost, and no more. Disaster benefits are a subsidy, and no one is entitled to a greater subsidy than the statute mandates. Suppose a particular piece of medical equipment, with an expected life of 20 years, had been in use for 10 years before being wrecked by a flood. Then the hospital loses the value of 10 years' use of the machine, not the value of 20 years' use. If it buys a new, 20-year machine, and receives from FEMA the depreciated (10-year) value of the old machine, it gets exactly the right compensation for what was lost. The Hospital does not offer any reason why a disaster-relief program should (or would) provide a payment that in effect extends the useful life of the machine from 20 years to 30 years. By the Hospital's lights, if a piece of equipment had been ruined a single day before it was scheduled for replacement, FEMA would have to pay for the cost of a brand new replacement. That would be absurd; it would give the Hospital a windfall.

At oral argument we asked the Hospital's lawyer what should happen if the flood had carried away a box of single-use syringes that initially contained 20 syringes, 19 of which had been used. The Hospital obviously would replace this with a new box of 20 syringes

rather than scour eBay for a box with only one left. What, we asked, should FEMA pay for the lost box containing one syringe? Counsel answered: the cost of a new box of 20 syringes. This answer has the virtue of consistency but exposes the silliness of the Hospital's position, since all it lost was one syringe. Likewise if an autoclave with one useful year of life remaining (before the flood) is ruined, the Hospital should receive the value of one year's use, not the cost of an autoclave that will be good for 20 or 50 years to come. The Stafford Act is not designed to make hospitals or anyone else better off than they were before disaster struck.

According to the Hospital, one of FEMA's employees promised reimbursement for the cost of new equipment. That promise, if made, lacks legal significance. No field employee can commit the agency to pay more than the statute and regulations require. The Hospital's submission sounds like a claim of estoppel, but the United States and its agencies cannot be estopped without detrimental reliance, see *Office of Personnel Management v. Richmond*, 496 U.S. 414 (1990), and the Hospital proclaims that it did not rely on this employee's statements. To the contrary, the Hospital says that it was required to obtain new equipment no matter what FEMA did or said. *Richmond* leaves open the question whether estoppel *ever* can support an order requiring the Treasury to pay money, and we need not tackle that issue given the Hospital's steadfast view that the purchase of new supplies and equipment was essential independent of the disaster-relief decision.

The Hospital also tells us that one FEMA employee wondered aloud why the agency should seek out ways to pay more to a well-endowed entity that already stood to receive $70 million. That's discrimination based on economic status, the Hospital insists. Yet the Hospital does not contend that anyone else has received disaster-relief payments calculated by reference to the cost of new equipment. Without a difference in outcome, there cannot have been discrimination based on economic status.

The parties' second dispute concerns the significance of proceeds the Hospital received from insurance. The statute does not allow reimbursement if the victim has another source of payment. 42 U.S.C. §5155(c). In other words, the collateral-source rule of tort law does not apply to disaster relief. The Hospital's insurance covered both property losses and business-interruption losses; the Stafford Act is limited to property losses. The Hospital's insurer paid out the policy limit of $25 million without allocating between property loss and business-interruption loss. FEMA concluded that property damage represents roughly two-thirds of the Hospital's losses within the policy's scope, so it attributed roughly $16 million of the insurance proceeds to the property damage and deducted that sum from the amount otherwise payable from federal funds. The Hospital does not dispute the ratio but does contend that no deduction should have been made.

The Hospital tells us that it used the whole $25 million to cover expenses such as salaries and the costs of

moving patients, and none on new equipment and supplies. Since the district court did not hold a trial, we must accept this statement. According to the Hospital, insurance coverage must be attributed to whatever the proceeds are used for. But why? Money is fungible. See *Boim v. Holy Land Foundation for Relief and Development*, 549 F.3d 685, 698 (7th Cir. 2008) (en banc); *United States v. Robinson*, 663 F.3d 265, 270 n.2 (7th Cir. 2011). The Hospital might have endorsed the $25 million check over to someone to pay for land on which a new building was to be constructed, or might have spent the whole $25 million on new equipment, but neither choice should affect disaster relief, because neither choice would affect either (a) how much the Hospital lost, or (b) how much it recovered from another source. How a hospital (or any other insured) *spends* insurance proceeds has nothing to do with what those proceeds represent.

The Hospital relies on *Hawaii v. FEMA*, 294 F.3d 1152 (9th Cir. 2002), for the proposition that an applicant for disaster relief can control, through its spending choices, how insurance proceeds will be allocated. We do not find that holding in the ninth circuit's decision. The dispute concerned the right way to treat the settlement of an insurance claim. The insured settled for less than the policy limit. FEMA took the position that the whole policy limit is "available" for the purpose of §5155(c) when the property damage exceeds the policy limit; Hawaii contended, and the ninth circuit held, that only the amount received from the insurer is "available" (as long as the settlement was commercially reasonable).

That conclusion has nothing to do with the question whether an insured that receives money from an insurer can manipulate the disaster-relief program by choosing how to spend the check. Given §5148, it takes a statutory or regulatory mandate to compel FEMA to pay any particular claim. The Hospital does not point to any language in the Stafford Act or any of FEMA's regulations that compels the agency to attach significance to any applicant's decision about how to disburse insurance proceeds. Indeed, as far as we can see nothing in the Stafford Act or any regulation prevents the agency from imputing *all* insurance proceeds to covered claims. FEMA did the Hospital a favor when it allocated a third of the proceeds to losses outside the scope of the Stafford Act, and thus deducted only $16 million rather than $25 million from the Hospital's claim.

We have now resolved the parties' disputes. The Hospital's invocation of the Administrative Procedure Act adds nothing to its claim under the Stafford Act. Although the Hospital at times seems to contend that FEMA promulgated a regulation without following the APA's requirements, it has not identified any regulation within the APA's scope. Operational decisions about how to allocate insurance proceeds, and the like, differ from regulations. So does the FAQ ("Frequently Asked Questions") sheet that FEMA distributes to help applicants understand its rules and policies.

The Hospital's due process claim is defunct. And we don't see what the Federal Tort Claims Act can add;

failure to provide disaster relief is not a tort under state law, and without a state-law tort the FTCA is irrelevant. At all events, the district court dismissed the FTCA theory because the Hospital had yet to make a proper administrative claim, which is essential before suit can be filed. See *McNeil v. United States*, 508 U.S. 106 (1993). The Hospital tells us that it now has pursued its administrative remedies and filed a second suit under the FTCA. We expect it to be met with a defense of claim preclusion (res judicata) as well as the observation that the suit is substantively feeble, but we leave that to the court where the FTCA litigation is pending.