**13-2919**
*In Re: Bank of America Corp.*

In the

United States Court of Appeals

For the Second Circuit

————

AUGUST TERM, 2015

ARGUED: AUGUST 26, 2015
DECIDED: MARCH 17, 2015

-

No. 13-2919

FLANAGAN, LIEBERMAN, HOFFMAN & SWAIM,
*Appellant,*

*v.*

OHIO PUBLIC EMPLOYEES RETIREMENT SYSTEM, STATE TEACHERS
RETIREMENT SYSTEM OF OHIO,
*Movants-Appellees,*

*v.*

PUBLIC PENSION FUNDS, THE PUBLIC PENSION FUND GROUP, STEVEN J.
SKLAR, AS (IRA ACCOUNT BENEFICIARY), ON BEHALF OF HIMSELF AND
ALL OTHERS SIMILARLY SITUATED, RHONDA WILSON, MICHAEL R.
BAHNMAIER, ALMA ALVAREZ, MARK ADAMS, ELIZABETH EAGEN,
VERNON C. DAILEY, RICHARD ADAME, ARLENE KAHN,
PETRA CHATMAN, STICHTING PENSIOENFONDS ABP, GRANT
MITCHELL, NEW YORK STATE TEACHERS' RETIREMENT SYSTEM, PUBLIC
EMPLOYEES' RETIREMENT ASSOCIATION OF COLORADO, STEVE R.
GRABER, INDIVIDUALLY AND AS ASSIGNEE OF CLAIMS OF THE SRG 2008
TRUST, SCHWAB SP500 INDEX FUND, SCHWAB 1000 INDEX FUND,
SCHWAB INSTITUTIONAL SELECT SP500 FUND, SCHWAB DIVIDEND

EQUITY FUND, SCHWAB CORE EQUITY FUND, SCHWAB PREMIER EQUITY FUND, SCHWAB FUNDAMENTAL US LARGE COMPANY INDEX FUND, SCHWAB TOTAL STOCK MARKET INDEX FUND, SCHWAB SP500 INDEX PORTFOLIO, SCHWAB MARKETTRACK GROWTH, PORTFOLIO, SCHWAB MARKETTRACK BALANCED PORTFOLIO, SCHWAB INVESTMENTS, SCHWAB CAPITAL TRUST, DR. SALOMON MELGEN, FLOR MELGEN, SFM HOLDINGS LIMITED PARTNERSHIP, INTERNATIONAL FUND MANAGEMENT S.A., DEKA INTERNATIONAL S.A. LUXEMBURG, DEKA INVESTMENT GMBH, DI, AARON KATZ, JOEL KATZ, JEREMY FINEBERG, SYLVIA WEISSMANN, PARKER FAMILY INVESTMENTS L.L.C., JEFFREY R. PARKER, THE 1997 JEFFREY R. PARKER FAMILY TRUST, DREW E. PARKER, THE 1994 DREW E. PARKER FAMILY TRUST, KEITH D. PARKER, JULIE M. SORIN, THE 1991 JEFFREY R. PARKER FAMILY TRUST, THE 1994 JULIE P. MANTELL FAMILY TRUST, MICHAEL A. PARKER, MARK D. WENDER, ELLIOT WENDER, PENINA WENDER, STANLEY L. WENDER, RAZELLE M. WENDER, JILL W. GOLDSTEIN, JERRY E. FINGER, AMBASSADOR LIFE INSURANCE COMPANY, SELECT INVESTORS EXCHANGE FUND, L.P., RICHARD FINGER, JEF FAMILY TRUST, 1976 REAL ESTATE TRUST, WALTER FINGER, THE JERRY E. FINGER FAMILY TRUST D/T/D 12/28/1989, THE JERRY E. FINGER FAMILY TRUST, LEO R. JALENAK, PEGGY E. JALENAK, KERS & CO., ROBERT GEGNAS, 198 LOCHA DRIVE, JUPITER, FL 33458-7752, STEVEN L. SHAPIRO, HARVEY M. MITNICK, NATHAN A. FRIEDMAN, BONNIE FRIEDMAN, KENNETH A. CIULLO, JOANNA CIULLO, THOMAS P. DINAPOLI, COMPTROLLER OF THE STATE OF NEW YORK, AS ADMINISTRATIVE HEAD OF THE NEW YORK STATE AND LOCAL RETIREMENT SYSTEMS AND AS SOLE TRUSTEE OF THE NEW YORK STATE COMMON RETIREMENT FUND, SCHWAB FINANCIAL SERVICES FUND ,
*Plaintiffs-Appellees,*

*v.*

BANK OF AMERICA CORP., GARY A. CARLIN, NELSON CHAI, KENNETH D. LEWIS, JOHN A. THAIN, WILLIAM BARNET, III, FRANK P. BRAMBLE, SR., JOHN T. COLLINS, GARY L. COUNTRYMAN, TOMMY R. FRANKS, CHARLES K. GIFFORD, MONICA C. LOZANO, WALTER E. MASSEY,

THOMAS J. MAY, PATRICIA E. MITCHELL, THOMAS M. RYAN, O. TEMPLE SLOAN, JR., MEREDITH R. SPANGLER, ROBERT L. TILLMAN, JACKIE M. WARD, MERRILL LYNCH & CO., INC., NEIL A. COTTY, JOE L. PRICE, BANC OF AMERICA SECURITIES L.L.C., MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, BANK OF AMERICA, J. STEELE ALPHIN, AMY WOODS BRINKLEY, BARBARA J. DESOER, LIAM E. MCGEE, TIMOTHY J. MAYOPOULOS, BRIAN T. MOYNIHAN, BRUCE L. HAMMONDS, RICHARD K. STRUTHERS, BANK OF AMERICA CORPORATION CORPORATE BENEFITS COMMITTEE DEFENDANTS, BANK OF AMERICA COMPENSATION AND BENEFITS COMMITTEE DEFENDANTS, KEITH T. BANKS, TERESA BRENNER, CAROL T. CHRIST, ARMANDO M. CODINA, VIRGIS W. COLBERT, GREGORY CURL, JOHN D. FINNEGAN, GREGORY FLEMING, FOX-PITT KELTON COCHRAN CARONIA WALLER (USA) L.L.C., J.C. FLOWERS & CO., L.L.C., JUDITH MAYHEW JONAS, PETER KRAUS, AULANA L. PETERS, JOSEPH W. PRUEHER, ANN N. REESE, MICHAEL ROSS, CHARLES O. ROSSOTTI, PETER STINGI, THOMAS K. MONTAG, BANK OF AMERICA CORPORATION, KENNETH D. DAVIS, MARTIN I. FINEBERG, KENNETH A. LEWIS, MERRILL LYNCH & CO., 4 WORLD FINANCIAL CNETER, NEW YORK, NY 10080, JOSEPH L. PRICE, *Defendants-Appellees.*

————

Appeal from the United States District Court
for the Southern District of New York.
No. 09 MD 2058 – P. Kevin Castel, *Judge*.

————

Before: WALKER, JACOBS, and LIVINGSTON, *Circuit Judges*.

————

Petitioner-appellant Flanagan, Lieberman, Hoffman & Swaim ("Flanagan") appeals from the decision of the United States District Court for the Southern District of New York (Castel, *J.*) denying the law firm's request for attorneys' fees drawn from a settlement fund

in a consolidated securities class action. Two of the lead plaintiffs in the class action had retained Flanagan shortly before the consolidation of the action and, after the appointment of several other firms as co-lead counsel, Flanagan had continued to work as non-lead counsel. The district court held that Flanagan was not entitled to its requested fee because, contrary to the contentions of the class's lead plaintiffs, Flanagan's efforts had not provided a benefit to the class. We conclude that the district court analyzed Flanagan's request under an incorrect standard. Accordingly, we VACATE the district court's orders denying Flanagan's fee request and REMAND the case for further proceedings consistent with this opinion.

————

> KEVIN P. PARKER (Michelle M. Carreras, Evan M. Janush, Arthur Miller, *on the brief*), The Lanier Law Firm, P.C., Houston, TX, *for Appellant*.

————

JOHN M. WALKER, JR., *Circuit Judge*:

Petitioner-appellant Flanagan, Lieberman, Hoffman & Swaim ("Flanagan") appeals from the decision of the United States District Court for the Southern District of New York (Castel, *J.*) denying the law firm's request for attorneys' fees drawn from a settlement fund in a consolidated securities class action. Two of the lead plaintiffs in

the class action had retained Flanagan shortly before the consolidation of the action and, after the appointment of several other firms as co-lead counsel, Flanagan had continued to work as non-lead counsel. The district court held that Flanagan was not entitled to its requested fee because, contrary to the contentions of the class's lead plaintiffs, Flanagan's efforts had not provided a benefit to the class. We conclude that the district court analyzed Flanagan's request under an incorrect standard. Accordingly, we VACATE the district court's orders denying Flanagan's fee request and REMAND the case for further proceedings consistent with this opinion.

## BACKGROUND

In April 2009, the Ohio Public Employees Retirement System and the State Teachers Retirement System of Ohio (collectively, "Ohio Lead Plaintiffs") hired Flanagan to represent them in an action against Bank of America, Merrill Lynch, and several officers and directors of the two companies. Ohio Lead Plaintiffs' action was one of twenty-eight separate securities lawsuits alleging the insufficiency of public disclosures made in connection with the companies' merger. On April 14, 2009, Flanagan and the Ohio Attorney General, acting on behalf of Ohio Lead Plaintiffs and as their statutory legal counsel, executed a retention agreement. Ohio Lead Plaintiffs also retained the law firms of Bernstein, Litowitz,

Berger & Grossman ("BLB&G") and Kaplan, Fox & Kilsheimer ("Kaplan Fox").

On June 30, 2009, the United States District Court for the Southern District of New York (Chin, *J.*) consolidated the twenty-eight separate actions into a single class action lawsuit. The district court then appointed a group of Lead Plaintiffs that included Ohio Lead Plaintiffs. The district court also appointed BLB&G; Kaplan Fox; and Kessler, Topaz Meltzer & Check as Co-Lead Counsel. All Lead Plaintiffs (including Ohio Lead Plaintiffs) had executed retainer agreements with their respective counsel (including Co-Lead Counsel and Flanagan) that included an identical fee schedule. The fee schedule capped total attorneys' fees for the actions at a specific percentage of class recovery; the fee schedule was set forth in a grid, such that the percentage compensation was graduated according to settlement amount and status of the case at the time of resolution.

Flanagan's involvement with the case continued after the appointment of Lead Plaintiffs and Co-Lead Counsel. Flanagan devoted 7,576.25 hours to the suit (for which the firm later sought $3,417,283.75 in fees) and advanced $12,843.28 in expenses. At the request of Co-Lead Counsel, Flanagan performed discovery work; assisted in the selection and preparation of expert witnesses; and provided analysis of legal developments, strategy, discovery

matters, and trial matters. Flanagan also attended all mediations, mock trials, focus groups, and trial and settlement strategy sessions. The firm, however, never filed a notice of appearance in the case.

Lead Plaintiffs ultimately agreed to settle their claims for $2,425,000,000. On February 19, 2013, with the prior approval of Lead Plaintiffs, Co-Lead Counsel filed a request that "Plaintiffs' Counsel" be awarded attorneys' fees in an amount representing 6.56% of the settlement fund less Plaintiffs' Counsel's expenses (amounting to $158,549,766.46 in total fees), as well as reimbursement of $8,082,828.32 in litigation expenses. As support for the requested percentage, Co-Lead Counsel affirmed that Plaintiffs' Counsel had expended 193,547 hours in the litigation, amounting to a lodestar value of $88,307,135; the requested fees yielded a multiplier of 1.8 on the lodestar. The fee request explicitly defined "Plaintiffs' Counsel" to include Flanagan. The request also included Flanagan's hours and expenses in its hour and expense totals.

On April 5, 2013, the district court (Castel, *J.*) conducted a hearing on the fee request. Max Berger, an attorney from BLB&G who represented Co-Lead Counsel, confirmed that "all five lead plaintiffs have approved the fee request" and that "the request was authorized under the fee grid in the retainer agreements entered into in this action with the lead plaintiffs." App. 167. Berger told the

district court that "lead plaintiff's counsel functioned exceedingly well together . . . [a]nd everybody contributed materially to the litigation." App. 172. After the district court questioned Flanagan's entitlement to any fee, Berger defended Flanagan's specific contributions.

The district court denied the portion of the fee request pertaining to Flanagan's fees and expenses. The district court noted that it was not contesting that Flanagan may have done "valuable work" in the litigation and explicitly declined to challenge Flanagan's claims regarding the quantity and nature of that work. The district court, however, concluded that Flanagan's efforts had not provided a benefit to the class. In doing so, the district court emphasized that (a) Flanagan had never been appointed class counsel, (b) Flanagan had not filed a notice of appearance in the case, and (c) Ohio Lead Plaintiffs did not mention Flanagan in declarations they submitted in support of the fee request. The district court also ordered that Co-Lead Counsel could not share any portion of their own fees with Flanagan without permission from the court.

On April 8, 2013, the district court entered an order that awarded Co-Lead Counsel attorneys' fees in the amount of $152,414,235.89, plus interest, and litigation expenses in the amount of $8,069,985.04. The order reiterated that Co-Lead Counsel could

not share their award "with any person not associated with Co-Lead Counsel's law firms, absent an order from the Court." App. 201.

On April 11, 2013, the district court entered a further order denying any fee award or reimbursement to Flanagan. Citing *Victor v. Argent Classic Convertible Arbitrage Fund L.P.*, which held non-lead counsel entitled to reasonable attorneys' fees for work completed prior to the appointment of a lead plaintiff if such work conferred "a substantial benefit to the class," 623 F.3d 82, 87 (2d Cir. 2010), the district court explained that Flanagan was not entitled to its fee because "th[e] record does not establish that services rendered by [Flanagan] were for the benefit of the class." App. 207-209.

On July 3, 2013, the district court denied Flanagan's motion for reconsideration, noting that "while [Flanagan] undoubtedly did work pertaining to the litigation, it has not identified any meaningful contribution that was not covered by lead counsel." App. 255. On August 1, 2013, Flanagan filed a notice of appeal from the district court's April 8, April 11, and July 3 orders.

## DISCUSSION

The Second Circuit reviews a district court's decision to grant or deny an award of attorneys' fees for abuse of discretion, reviewing de novo any rulings of law. *Union of Needletrades, Indus. & Textile Emps. AFL-CIO, CLC v. INS*, 336 F.3d 200, 203 (2d Cir. 2003). Here, Flanagan argues that the district court made an error of law

when it applied *Victor* and rejected Lead Plaintiffs' contentions that Flanagan's contributions to the class entitled the firm to its requested fee. Flanagan argues that the proper standard for assessing Flanagan's fee application is not the "substantial benefit" test outlined in *Victor* but rather a standard of deference to lead plaintiffs, as outlined by the Third Circuit in *In re Cendant Corporation Securities Litigation*, 404 F.3d 173, 199 (3d Cir. 2005) ("*Cendant II*"). Since the firm's fee request was based on work completed after the appointment of lead plaintiff and *Victor* only defines the standard for requests based on non-lead counsel's work prior to such appointment, Flanagan argues that the Second Circuit should apply *Cendant II's* analytical framework. We decline to adopt a categorical reading of *Victor* to the effect that its standard is only relevant for work done before the appointment of a lead plaintiff. Under the circumstances presented in this case, however, we agree that the district court should have applied a standard of deference to lead plaintiff's determination.

## I.     The *Victor* Standard

Under the "common fund doctrine," attorneys whose work produces a common fund benefitting a group of plaintiffs may receive reasonable attorneys' fees from that fund. *Victor*, 623 F.3d at 86. This doctrine frequently applies in the context of a class action lawsuit. *Id.*

Under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4, the district court appoints the lead plaintiff of a class action and that plaintiff, in turn, selects lead counsel, subject to approval of the court. 15 U.S.C. §§ 78u-4(a)(3)(B)(i), 78u-4(a)(3)(B)(v). The district court then acts "as a fiduciary who must serve as a guardian of the rights of absent class members." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 52 (2d Cir. 2000) (quoting *City of Detroit v. Grinnell Corp.*, 560 F.2d 1093, 1099 (2d Cir. 1997); *see In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 216, 221 (2d Cir. 1987) (acknowledging "the court's role as guardian of class rights in relation to settlement review"). Congress enacted the PSLRA to reduce the frequency of meritless and abusive securities lawsuits. *See Amgen Inc. v. CT Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1200 (2013); *Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.*, 186 F.3d 157, 166-67 (2d Cir. 1999). Among the PSLRA's provisions designed to mitigate abusive lawsuits are limitations on attorneys' fees. 15 U.S.C. § 78u-4(a)(6); *see Amgen Inc.*, 133 S. Ct. at 1200.

In *Victor*, the Second Circuit set forth certain standards for allocating attorneys' fees to non-lead counsel under the PSLRA. *Victor*, 623 F.3d at 86-7. *Victor* held, as noted above, that non-lead counsel are entitled to reasonable attorneys' fees for work completed prior to the appointment of a lead plaintiff if such work conferred "a

substantial benefit on the class." *Id.* at 86. *Victor*, however, did not address the framework for analyzing a fee request from non-lead counsel for work completed after the appointment of lead plaintiff, nor the narrower question presented by this case of what framework should apply when that request is part of a general fee allocation that complies with an *ex ante* agreed-upon percentage-of-the-fund cap.

### II.    The *Cendant II* Standard

In *Cendant II*, the Third Circuit held that the district court must afford a "presumption of correctness" to a lead plaintiff's decision not to award fees to non-lead counsel for its work performed after lead plaintiff's appointment. 404 F.3d at 199. In reaching this determination, the Third Circuit relied broadly on the proposition that, whereas courts bear the responsibility for determining non-lead counsel's fees for work performed prior to the appointment of lead plaintiff, post-appointment "the primary responsibility for compensation shifts from the court to that lead plaintiff." *Id.* at 197. There are important distinctions between *Cendant II* and the present case – in particular that Flanagan asks us to afford a presumption of correctness to lead plaintiff's decision to award fees rather than to deny such fees. Nevertheless, we agree that *Cendant II*'s presumption of correctness, rather than *Victor*'s "substantial benefit" test, properly applies in the circumstances here,

where a fee request emanates from non-lead counsel for work completed after lead plaintiff's appointment and lead plaintiffs advocate for non-lead counsel to receive a portion of a previously-capped percentage-of-the-fund award.

*Cendant II*'s approach recognizes that lead plaintiffs and their counsel are better positioned than the court to "determine how much non-lead counsel's efforts, as opposed to lead counsel's independent work, contributed to the final work product" and to "attach a dollar value to that contribution." *Id.* at 201 n.17; *see Victor*, 623 F.3d at 90 ("[L]ead counsel is typically well-positioned to weigh the relative merit of other counsel's contributions . . . ."). *Cendant II*'s approach also aligns with the PSLRA's conception of the lead plaintiff as the driver of and decisionmaker for the class action. *See Cendant II*, 404 F.3d at 197 (noting the responsibility the PSLRA places on the lead plaintiff to select and retain representation for the entire class); *see also* S. Rep. No. 104-98, at 10 (1995) (explaining that the lead plaintiff "should drive the litigation").

To be sure, the circumstances of this case are different from those in *Cendant II* because *Cendant II* involved a lead plaintiff's contention that non-lead counsel was not entitled to fees. *Id.* We adopt the standard articulated in *Cendant II* in the circumstances of this case (where lead plaintiffs and lead counsel seek to compensate other counsel as part of a capped percentage-of-the-fund recovery).

We need not decide whether that standard applies in this Circuit under the circumstances presented in _Cendant II_ (where class representatives and class counsel argue that other counsel is not entitled to fees that, if paid, would diminish class members' recovery) or under any other post-appointment circumstances (for example, where lead plaintiffs and counsel advocate payment of fees to other counsel that would be expected to reduce payments to class members; or where they seek to deny fees to other counsel and those fees would come out of class counsel's pockets).[1]

Here, Lead Plaintiffs and Lead Counsel argued that Flanagan's contributions merited the fee denied by the district court. A lead plaintiff is unlikely to argue in favor of a fee award to an undeserving attorney, given that the fee award reduces the lead plaintiff's recovery.

Moreover, Lead Plaintiffs and Co-Lead Counsel included Flanagan in a request for a capped percentage of class recovery – one to which all Lead Plaintiffs and all counsel had agreed _ex ante_. Had Flanagan (and its hours of work) not been included in such

---

[1] We expressly reject _Cendant II_'s suggestion that one reason for deferring to the discretion of lead plaintiffs and lead class counsel is that they will often be "repeat players in the securities class action business" and will therefore seek to "maintain good relations with the rest of the securities plaintiffs' bar." _Cendant II_, 404 F.3d at 199. This seems to be backwards. These considerations should not bear upon the decisions of a fiduciary and invite corruption.

request, it seems highly likely that Co-Lead Counsel would have applied for the same 6.56% of the settlement fund, in accordance with the retainer agreements. The lodestar multiplier used as a check on the percentage recovery would have been slightly higher, but Co-Lead Counsel presumably would have expected the district court to award the requested fee nonetheless given the relatively low overall percentage and the result obtained for the class. In these circumstances, the request that a portion of the percentage be awarded to Flanagan is best viewed as one that was expected to diminish *Co-Lead Counsel's* recovery, as opposed to that of class members. It is therefore unlikely that Co-Lead Counsel would have argued in favor of this fee award had Flanagan been underserving.[2] Furthermore, lead plaintiffs and lead counsel are also bound by a fiduciary duty to the class and would breach that duty by arguing that the class's recovery should be reduced by undeserved attorneys' fees.

The presumption of correctness is also rebuttable. We agree with *Cendant II* that even when the presumption of correctness

---

[2] Because the district court excised the portion of the percentage fee request that it attributed to Flanagan, an award to Flanagan at this juncture would effectively diminish class recovery vis-à-vis the result of the district court's orders, but this should be disregarded because the expectations of lead counsel and lead plaintiffs at the time the request was made matter in determining whether deference to that request was appropriate.

applies, it may be refuted through a prima facie showing that the proposed fee is either procedurally improper, because the lead plaintiff (a) breached fiduciary duties by proposing an allocation motivated by an interest other than the best interest of the class or (b) breached fiduciary duties by failing to "carefully consider and reasonably investigate" non-lead counsel's fee request, or that the proposed fee allocation is substantively improper because it was clearly excessive in light of the actual contributions and reasonable expectations of non-lead counsel. *Id.* at 200. As to the latter question—whether the fee is clearly excessive—we note that the common-fund inquiry from *Victor*, whether non-lead counsel conferred "a substantial benefit on the class," *Victor*, 623 F.3d at 87, remains highly relevant. Further, we note in passing that failure to file a notice of appearance can indeed be relevant to this latter inquiry: the filing of a notice of appearance serves to keep a district court apprised of which counsel are contributing to the litigation of a class action suit, which in turn facilitates the court as serving as a "guardian of class rights." *In re "Agent Orange,"* 818 F.2d at 221.

We further highlight an important distinction between *Cendant II* and this case that bears on the process of rebutting a presumption of correctness. In *Cendant II*, in which lead plaintiffs sought to *deny* a fee award to non-lead counsel, non-lead counsel served as a natural party to seek to rebut the presumption: thus, the

adversarial process could serve to protect the interests of the class and ensure that fee awards reflected the contribution of the relevant parties. In contrast, in this case, where non-lead counsel, lead counsel, and lead plaintiffs all seek the same outcome, there is no natural party with incentive to make a prima facie showing rebutting the presumption of correctness.

In *Cendant I*, the Third Circuit addressed a similar situation, noting that "there is an arguable tension between the presumption of reasonableness accorded the arrangement between the Lead Plaintiff and properly selected counsel and the duty imposed on the Court by the Reform Act, 15 U.S.C. § 78u-4, to insure '[t]hat total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class.'" *In re Cendant Corp. Litig.*, 264 F.3d 201, 283 (3d Cir. 2001) ("*Cendant I*").

In light of this tension, we observe that the district court must be mindful that it must act "as a guardian of the rights of absent class members," *Goldberger*, 209 F.3d at 52, in assessing whether a presumption of correctness has been properly refuted and then, if indeed it has, determining on its own the appropriate fee allocation. That role may require more where, as here, no natural party may

step forward seeking to rebut a presumption of correctness or argue against a fee allocation.

In this case, the district court should have afforded a rebuttable presumption of correctness to Lead Plaintiffs' proposed allocation of fees to Flanagan. Lead Plaintiffs consistently maintained, in submissions before the court and through statements made by Co-Lead Counsel, that Flanagan's fee was reasonable both with respect to the amount of work done and in light of the firm's overall contribution to the class. While the district court is still tasked with overseeing the compensation decisions of Lead Plaintiffs, those decisions were nonetheless entitled to greater deference than they received.

### III.    Sharing Prohibition

We are also troubled by the district court's order prohibiting Co-Lead Counsel from sharing their fees with Flanagan. While we appreciate the district court's understanding of its role as guardian of class rights, we note that if Lead Counsel were to share with Flanagan a portion of their own awarded fee, such an arrangement would not reduce class recovery at all. Where, as here, there has been no suggestion of corruption or collusion by class counsel, we can see no reason to interfere in any decision Co-Lead Counsel might make to share their own portion of fees with a law firm that produced work at Co-Lead Counsel's behest.

## IV.    Abuse of Discretion

Because we hold that the standard set forth in *Cendant II* applies to fee applications from non-lead counsel for work completed after the appointment of lead plaintiff and lead counsel where the fee to non-lead counsel is one part of a capped percentage of a common fund, we have no reason to address Flanagan's alternative argument that, even if *Victor* provides the proper standard, the district court misapplied that standard.

With Lead Plaintiffs' and Co-Lead Counsel's support, Flanagan seeks compensation for work completed after the appointment of Lead Plaintiff and Co-Lead Counsel. We remand this matter to the district court for a reevaluation of Flanagan's entitlement to this compensation under the standard of deference articulated in this opinion.

## CONCLUSION

For the reasons stated above, we VACATE the district court's orders denying Flanagan's fee request and REMAND for further proceedings consistent with this opinion.